**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PRESERVATION SOCIETY OF NEWPORT COUNTY, <br>　　　　　*Plaintiff*, <br>　　v. <br><br> DEB HAALAND, *et al.*, <br>　　　　　*Defendants*, <br>　　　and <br><br> SOUTH FORK WIND, LLC <br>　　　*Defendant-Intervenor* | Case No.: 1:23-cv-03510-APM |
| SOUTHEAST LIGHTHOUSE FOUNDATION, <br>　　　　　*Plaintiff*, <br>　　v. <br><br> DEB HAALAND, *et al.*, <br>　　　　　*Defendants*, <br>　　　and <br><br> SOUTH FORK WIND, LLC <br>　　　*Defendant-Intervenor* | Case No.: 1:23-cv-03514-APM |
| GREEN OCEANS, *et al.*, <br>　　　　　*Plaintiffs*, <br>　　v. <br><br> UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*, <br>　　　　　*Defendants*, <br>　　　and <br><br> SOUTH FORK WIND, LLC <br>　　　*Proposed Defendant-Intervenor* | Case No.: 1:24-cv-01087-APM |

## <u>UNOPPOSED MOTION OF SOUTH FORK WIND, LLC</u>
## <u>TO INTERVENE AS DEFENDANT AND TO DEFER FILING ANSWER</u>

South Fork Wind, LLC ("South Fork Wind") respectfully moves to intervene of right as a defendant in case number 24-cv-01087 pursuant to Federal Rule of Civil Procedure 24(a)(2) or, alternatively, seeks permissive intervention pursuant to Rule 24(b).   In accordance with Local Civil Rule 7, in support of its Motion, South Fork Wind is concurrently filing its statement of points and authorities, declaration of Melanie Gearon, and proposed order.   South Fork Wind also respectfully seeks leave to file its Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Civil Rule 7(j) by the same deadline as Federal Defendants in this case, or three days after intervention is granted, whichever is later.   South Fork Wind respectfully requests that the Court grant its Unopposed Motion to Intervene and to Defer Filing Answer.

Pursuant to Local Civil Rule 7(m), counsel for South Fork Wind has conferred with the parties regarding this Motion.   Plaintiffs stated they do not oppose South Fork Wind's intervention, and Federal Defendants take no position on South Fork Wind's intervention.

Dated:  May 1, 2024                                 Respectfully submitted,

By */s/* Janice M. Schneider
Janice M. Schneider (D.C. Bar No. 472037)
Stacey L. VanBelleghem (D.C. Bar No. 988144) Devin M. O'Connor (D.C. Bar No. 1015632) LATHAM & WATKINS LLP
555 11th Street NW, Suite 1000
Washington, D.C. 20004
Tel:  (202) 637-2200
Fax:  (202) 637-2201
Email: janice.schneider@lw.com
        stacey.vanbelleghem@lw.com
        devin.o'connor@lw.com

*Counsel for Proposed Defendant-Intervenor*
*South Fork Wind, LLC*

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PRESERVATION SOCIETY OF NEWPORT COUNTY,<br>            *Plaintiff*,<br><br>        v.<br><br>DEB HAALAND, *et al.*,<br>            *Defendants*,<br>        and<br><br>SOUTH FORK WIND, LLC<br>            *Defendant-Intervenor* | Case No.: 1:23-cv-03510-APM |
| SOUTHEAST LIGHTHOUSE FOUNDATION,<br>            *Plaintiff*,<br><br>        v.<br><br>DEB HAALAND, *et al.*,<br>            *Defendants*,<br>        and<br><br>SOUTH FORK WIND, LLC<br>            *Defendant-Intervenor* | Case No.: 1:23-cv-03514-APM |
| GREEN OCEANS, *et al.*,<br>            *Plaintiffs*,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.*,<br>            *Defendants*,<br>        and<br><br>SOUTH FORK WIND, LLC<br>            *Proposed Defendant-Intervenor* | Case No.: 1:24-cv-01087-APM |

**STATEMENT OF POINTS AND AUTHORITIES**
**IN SUPPORT OF SOUTH FORK WIND, LLC'S**
**UNOPPOSED MOTION TO INTERVENE AS A DEFENDANT AND TO DEFER**
**FILING ANSWER**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II. BACKGROUND ...................................................................................................5

  A.  South Fork Wind Project Overview...............................................................5
  B.  Multi-Year Federal Review and Approval Processes ............................................6
      1.  Outer Continental Shelf Lands Act and National Environmental
          Policy Act........................................................................................7
      2.  Endangered Species Act .........................................................................9
      3.  Marine Mammal Protect Act ....................................................................9
      4.  Coastal Zone Management Act..................................................................10
      5.  National Historic Preservation Act ..........................................................10
      6.  Clean Water Act...............................................................................12
  C.  South Fork Wind Financial Obligations and Commercial Commitments ...............12

III. ARGUMENT .....................................................................................................13

  A.  South Fork Wind Is Entitled to Intervention of Right .........................................13
      1.  South Fork Wind Has Article III Standing .................................................14
      2.  This Motion Is Timely .........................................................................16
      3.  South Fork Wind Has Multiple Significantly Protectable Interests
          Relating to the Subjects of This Action ....................................................17
      4.  Without Intervention, Disposition of the Action Would Impede
          South Fork Wind's Ability to Protect Its Interests.......................................17
      5.  Existing Parties Will Not Adequately Represent South Fork
          Wind's Interests ...............................................................................18
  B.  Alternatively, the Court Should Grant Permissive Intervention ...........................20
  C.  South Fork Wind Should Be Permitted to File Its Answer by the Same
      Deadline as Federal Defendants...................................................................21

IV. CONCLUSION.....................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Am. Horse Prot. Ass'n v. Veneman*,
   200 F.R.D. 153 (D.D.C. 2001)............................................................19

*Carpenters Indus. Council v. Zinke*,
   854 F.3d 1 (D.C. Cir. 2017)..............................................................15

*\*Crossroads Grassroots Pol'y Strategies v. FEC*,
   788 F.3d 312 (D.C. Cir. 2015) .............................................13, 14, 15, 16, 17, 18

*Dimond v. Dist. of Columbia*,
   792 F.2d 179 (D.C. Cir. 1986) ..........................................................19

*EEOC v. Nat'l Children's Ctr., Inc.*,
   146 F.3d 1042 (D.C. Cir. 1998) .........................................................20

*Friends of the Headwaters v. U.S. Army Corps of Eng'rs*,
   2021 WL 1061162 (D.D.C. Mar. 20, 2021)...............................................18

*\*Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) ......................................................17, 18, 20

*Hardin v. Jackson*,
   600 F. Supp. 2d 13 (D.D.C. 2009) .......................................................19

*Idaho Farm Bureau Fed'n v. Babbitt*,
   58 F.3d 1392 (9th Cir. 1995) ...........................................................16

*Jones v. Prince George's Cnty., Md.*,
   348 F.3d 1014 (D.C. Cir. 2003) .........................................................17

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992)...................................................................15

*Nat. Res. Def. Council v. Costle*,
   561 F.2d 904 (D.C. Cir. 1977) ..........................................................19

*Sierra Club v. EPA*,
   292 F.3d 895 (D.C. Cir. 2002) .......................................................14, 15

*United States v. Am. Tel. & Tel. Co.*,
   642 F.2d 1285 (D.C. Cir. 1980) .........................................................18

# STATUTES

16 U.S.C.
 § 1536.........................................................................................................................9
 § 1536 (b)(4) .............................................................................................................9

New York State Climate Leadership and Community Protection Act of 2019
 § 1(12)(d) ..................................................................................................................6
 § 4.............................................................................................................................6

# RULES

Fed. R. Civ. P.
 24(a)(2) ...................................................................................................1, 13, 17, 20
 24(b) ...................................................................................................................2, 20
 24(b)(1)(B) ................................................................................................................20
 24(b)(3) .....................................................................................................................20
 24(c) ..............................................................................................................4, 21, 22

Local Civil Rule 7(j) ..................................................................................................4, 21

Local Civil Rule 7(m) ......................................................................................................2

# OTHER AUTHORITIES

Biden Administration Jumpstarts Offshore Wind Energy Projects to Create Jobs,
 The White House (Mar. 29, 2021), https://www.whitehouse.gov/briefing-
 room/statements-releases/2021/03/29/fact-sheet-biden-administration-
 jumpstarts-offshore-wind-energy-projects-to-create-jobs/ ......................................6

U.S. Dep't of Energy, Advancing Offshore Wind Energy in the United States
 (Mar. 2023), https://www.energy.gov/sites/default/files/2023-03/advancing-
 offshore-wind-energy-full-report.pdf........................................................................6

## I.       INTRODUCTION

South Fork Wind, LLC ("South Fork Wind") is the developer of the South Fork Wind Farm and South Fork Export Cable (collectively, the "South Fork Wind Project" or "Project"), an offshore wind energy project which provides clean, reliable power to homes and businesses in New York.  South Fork Wind has worked to develop the South Fork Wind Project for over a decade and has already invested well over $1 billion, completed construction, and begun selling power to the New York electrical grid.  South Fork Wind is the first commercial scale offshore wind farm in our Nation's history to deliver power to the U.S. electric grid.

The Plaintiff organizations and individuals (collectively, "Plaintiffs") seek an order reversing and setting aside approvals issued by Federal Defendants[1] for the South Fork Wind Project, alleging violations of the Administrative Procedure Act ("APA"), National Environmental Policy Act ("NEPA"), Endangered Species Act ("ESA"), Outer Continental Shelf Lands Act ("OCSLA"), Marine Mammal Protection Act ("MMPA"), Coastal Zone Management Act ("CZMA"), National Historic Preservation Act ("NHPA"), Clean Water Act ("CWA"), and Migratory Bird Treaty Act ("MBTA").  *See Green Oceans v. U.S. Dep't of Interior,* No. 1:24-cv-01087-APM, Compl. to Reverse and Set Aside Final Agency Action, Dkt. 1 ("Green Oceans Compl."), at 4-5.

South Fork Wind seeks intervention of right in case number 24-cv-01087 ("this Case") pursuant to Federal Rule of Civil Procedure 24(a)(2) to defend its significant investments and interests in its Project.  This Court granted South Fork Wind intervention of right in two earlier-

---

[1] "Federal Defendants" are the U.S. Department of the Interior, the Secretary of the Interior, the Bureau of Ocean Energy Management ("BOEM"), the Director of BOEM, the National Marine Fisheries Service ("NMFS"), the Administrator of NMFS, the U.S. Army Corps of Engineers ("USACE"), and the Commanding General of USACE.

filed consolidated cases challenging South Fork Wind Project approvals, which this Court recently consolidated with this Case.  *See Pres. Soc'y of Newport Cnty. v. Haaland,* No. 1:23-cv-03510-APM (D.D.C.); *Se. Lighthouse Found. v. Haaland*, No. 1:23-cv-3514-APM (D.D.C) (case consolidated with No. 1:23-cv-03510-APM on Dec. 20, 2023); *see also Green Oceans v. U.S. Dep't of Interior,* No. 1:24-cv-01087-APM, Minute Order (D.D.C. Apr. 18, 2024) (J. Mehta) (consolidating cases).  Alternatively, South Fork Wind seeks leave for permissive intervention under Federal Rule of Civil Procedure 24(b).  Pursuant to Local Civil Rule 7(m), counsel for South Fork Wind has consulted with counsel for Plaintiffs and Federal Defendants.  Plaintiffs stated they do not oppose South Fork Wind's intervention, and Federal Defendants take no position on South Fork Wind's intervention.

This Case stems from Plaintiffs' January 16, 2024 Complaint challenging distinct federal approvals issued for both the South Fork Wind Project and the separate Revolution Wind Project, which is being developed by Revolution Wind, LLC ("Revolution Wind").  That case was initially assigned to the Honorable Judge Royce C. Lamberth.  Federal Defendants filed a motion to sever Plaintiffs' claims challenging Federal Defendants' South Fork Wind approvals from claims challenging the Revolution Wind approvals, which Judge Lamberth granted on April 10, 2024 ("April 10 Memorandum and Order"), finding that it was in the interests of judicial efficiency to sever the South Fork Wind claims and docketed them under a new case number before Your Honor.  *Green Oceans v. U.S. Dep't of Interior,* No. 1:24-cv-01087-APM, Mem. and Order, Dkt. 25 ("Apr. 10 Mem. & Order").

Prior to the April 10 Memorandum and Order severing the case and only three weeks after the Complaint had been filed, South Fork Wind and Revolution Wind had moved to intervene in the case.  While the April 10 Memorandum and Order found that Revolution Wind "has clearly

met the requirements for intervention as of right" to defend the challenge against its approvals, because Judge Lamberth severed the claims relating to the South Fork Project, the Court denied "the motion to intervene with respect to South Fork, without prejudice to South Fork moving to intervene in that new docket." Apr. 10 Mem. & Order, at 6. Accordingly, South Fork Wind is filing the instant Motion to Intervene in this new docket (as consolidated).

South Fork Wind should be granted intervention of right consistent with the two related South Fork Wind Project cases currently pending before Your Honor, both of which have been consolidated with this Case, and for the same reasons Judge Lamberth held Revolution Wind was entitled to intervention of right in the April 10 Memorandum and Order. As a threshold matter, South Fork Wind has standing for the reasons described below. *See infra* Section III.A.1. South Fork Wind can satisfy the four-factor test for intervention of right as well. *First*, the requested intervention is timely and would not prejudice any of the existing parties. *See infra* Section III.A.2. *Second*, South Fork Wind has direct, substantial, and legally protectable interests in its Project's challenged approvals. South Fork Wind has sought, consulted on, and received many required permits and approvals from state and federal authorities—including the approvals at issue in this Case that are required for construction and operation of the Project at significant expense. *See infra* Sections II.B & III.A.3. *Third,* Plaintiffs' requested relief threatens to directly impair South Fork Wind's interests, as an order enjoining, setting aside, or reversing the challenged approvals for the Project would cause significant delays in operation, lost revenue, and threaten the investments in the Project. *See infra* Section III.A.4. *Fourth*, South Fork Wind's participation in this Case is necessary because its interests are distinct from the interests of the Federal Defendants and are not adequately represented in this litigation. *See infra* Section III.A.5.

This Case is the latest in a string of litigation challenging the South Fork Wind Project's federal approvals, none of which have been decided against the validity of the Project's approvals on the merits, and in all of which the courts have denied any requested temporary or preliminary injunctive relief.  South Fork Wind has been granted intervention in numerous federal district court cases challenging its Project approvals (not to mention its participation in numerous New York State court lawsuits).  *See Pres. Soc'y of Newport Cnty. v. Haaland,* No. 1:23-cv-03510-APM, Minute Order (D.D.C. Dec. 12, 2023) (J. Mehta); *Se. Lighthouse Found. v. Haaland*, No. 1:23-cv-3514-APM, Minute Order (D.D.C. Dec. 6, 2023) (J. Mehta) (case later consolidated with 1:23-cv-03510-APM); *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022); *Mahoney v. U.S. Dep't of the Interior*, No. 2:22-cv-01305-FB-ST, Dkt. 16 (E.D.N.Y. Mar. 14, 2022); *Allco Renewable Energy Ltd. v. Haaland*, No. 1:21-cv-11171-IT, Dkt. 121 (D. Mass. June 21, 2022).[2]  This Court should likewise grant South Fork Wind's request to intervene in this Case.

If the Court grants South Fork Wind's Motion to Intervene, South Fork Wind respectfully requests that the Court permit it to file its Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Civil Rule 7(j) by the same deadline as Federal Defendants in this Case or three days after intervention is granted, whichever is later.  *See* Apr. 10 Mem. & Order, at 9-11 (granting Revolution Wind intervention and "permit[ting] Revolution Wind to file its answer or other responsive pleading by the same deadline as Federal Defendants, which is within sixty days of the filing of plaintiffs' first amended complaint"); *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022) (granting South Fork Wind intervention in

---

[2] *See also Save Long Beach Island v. U.S. Dep't of Commerce*, No. 3:23-cv-01886-RK, Dkt. 18 (D.N.J. May 19, 2023) (granting intervention to movant Orsted North America Inc. ("Ørsted"). Ørsted is one of the indirect parent companies of South Fork Wind, as is Eversource Energy.

challenge to federal Project approvals and ordering it to file its Answer or other responsive pleading on same date as federal defendants); *infra* Section III.C.

## II.  BACKGROUND

### A.  South Fork Wind Project Overview

The South Fork Wind Project involves the construction and operation of an approximately 130-megawatt ("MW") commercial-scale offshore wind energy facility, consisting of 12 wind turbine generators ("WTGs").  Declaration of Melanie Gearon in Support of South Fork Wind's Motion to Intervene ("Gearon Decl.") ¶ 5.  This Project is sited within commercial lease OCS-A 0517, which is located in the Atlantic Ocean approximately 19 miles southeast of Block Island, Rhode Island, and approximately 25 miles from Newport, Rhode Island, on the Outer Continental Shelf in federal waters.  *Id.*  The South Fork Export Cable connects the wind farm to the mainland electric grid at a substation in East Hampton, New York, for the delivery of power to the South Fork of Long Island.  *Id.* ¶ 6.  After receiving required federal, state, and local approvals, South Fork Wind began construction of the South Fork Wind Project in early 2022 and since then has: (1) completed construction, testing, and commissioning of the onshore substation and export cable; (2) installed and tested the offshore export cable; (3) completed installation of all inter-array cables between the twelve offshore WTG locations; (4) fully installed all WTGs; and (5) begun supplying power to the New York electrical grid.  *Id.*

The South Fork Wind Project is already supplying, and will continue to supply, renewable energy and jobs to New York State and also provides significant economic benefits and job creation in Rhode Island and Connecticut.  *Id.* ¶ 3.  The South Fork Wind Project contributes to both the federal government's and New York State's carbon reduction goals.  The federal

government has set a goal of 30 gigawatts ("GW") of offshore wind by 2030.[3]  This goal will help the federal government meet its target to achieve 100% clean electricity by 2035.[4]  Similarly, New York State's climate goals further require, as a means to achieving its target of 100% zero-emission electricity by 2040, the development of 9 GW of offshore wind by 2035.  *See* New York State Climate Leadership and Community Protection Act of 2019, §§ 1(12)(d) & 4.

### B.  Multi-Year Federal Review and Approval Processes

South Fork Wind has invested significant resources in the extensive, multi-year planning and development process for the South Fork Wind Project, including by developing voluminous technical and scientific submissions to federal, state, and municipal agencies and participating in public review processes.  Gearon Decl. ¶ 11.  South Fork Wind's direct involvement with Defendant BOEM goes back to July 31, 2013, when BOEM conducted a competitive lease sale for commercial leasing for wind power generation offshore Rhode Island and Massachusetts.  *Id.* ¶ 12.  Deepwater Wind New England, LLC won the lease, and then it assigned a portion of the lease area to South Fork Wind.[5]  *Id.*  The multi-year federal review and approval process for the South Fork Wind Project has included the following.

---

[3] *See* FACT SHEET: Biden Administration Jumpstarts Offshore Wind Energy Projects to Create Jobs, The White House (Mar. 29, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/03/29/fact-sheet-biden-administration-jumpstarts-offshore-wind-energy-projects-to-create-jobs/.

[4] *See* U.S. Dep't of Energy, Advancing Offshore Wind Energy in the United States 1, 9 (Mar. 2023), https://www.energy.gov/sites/default/files/2023-03/advancing-offshore-wind-energy-full-report.pdf ("[O]ffshore wind can be a key contributor in many U.S. energy markets to achieving a zero-carbon electricity grid by 2035 and a net-zero emissions economy by 2050.").

[5] The South Fork Wind Project is owned by South Fork Wind.  South Fork Wind is a joint venture indirectly owned in equal part by Ørsted and Eversource Energy.  South Fork was formerly known as Deepwater Wind South Fork, LLC.

1.      **Outer Continental Shelf Lands Act and National Environmental Policy Act**

Pursuant to OCSLA, South Fork Wind developed and submitted to BOEM a Site Assessment Plan, which BOEM approved in October 2017.  *Id.* ¶ 13.  South Fork Wind undertook extensive field surveys to understand and characterize the environment and the Project site, including meteorological, bathymetric, geological, geotechnical, geophysical, biological, archaeological, hazard, and oceanographic surveys.  *Id.* ¶ 14.  The survey work for the South Fork Wind Project also included an assessment of historic properties, including a marine archaeological survey, a terrestrial archaeological survey, a Visual Impacts Analysis, an Historic Resources Visual Effects Analysis specific to the Project, and a Cumulative Historic Resources Visual Effects Analysis.[6]  *Id.* ¶¶ 14, 27-28.

South Fork Wind prepared and submitted to BOEM a detailed Construction and Operations Plan ("COP") in June 2018, which South Fork Wind updated as the development process progressed.  Gearon Decl. ¶ 15.  The final version[7] is thousands of pages long, including appendices.[8]  On October 19, 2018, BOEM issued a Notice of Intent ("Notice") to prepare an Environmental Impact Statement ("EIS") under NEPA for its review of the COP.  *Id.* ¶ 16.  That Notice began a three and a half-year period of environmental review by the federal government involving South Fork Wind, ten federal agencies, five state and local cooperating agencies, and an

---

[6] *See* BOEM Cumulative Historic Analysis – South Fork Wind Farm and South Fork Wind Farm Export Cable Project, November 2020, https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/SFWF-S106-CHRVEA.pdf.

[7] *See* BOEM Construction & Operations Plan – South Fork Wind Farm, Vol. I, May 2021, https://www.boem.gov/sites/default/files/documents/renewable-energy/South-Fork-Construction-Operations-Plan.pdf.

[8] *See* BOEM Construction & Operations Plan – South Fork Wind Farm, Vol. II, May 2021, https://www.boem.gov/renewable-energy/state-activities/volume-ii-appendices.

extensive array of other stakeholders, ranging from the fishing industry, to local communities, to American Indian tribes and historic preservation organizations.  *Id*.  BOEM published the draft EIS ("DEIS") for the South Fork Wind Project on January 4, 2021.  *Id.*  BOEM's NEPA process included extensive consultations and public involvement.  *Id.* ¶¶ 16-18.  BOEM held three public scoping meetings where interested parties were invited to offer feedback and identify issues and potential alternatives for BOEM to consider in the EIS, as well as three additional public meetings during the public comment period on the DEIS.  *Id.* ¶ 18.  South Fork Wind attended all of the meetings and submitted comments on the DEIS.  *Id.*  BOEM published the final EIS ("FEIS") on August 16, 2021.[9]  *Id.* ¶ 16.

On November 24, 2021, BOEM issued a Record of Decision ("ROD") documenting the U.S. Department of the Interior's decision to approve the COP with some modifications.  BOEM subsequently issued the COP approval on January 18, 2022.[10]  *Id.* ¶ 19.  Extensive additional time, effort, and financial resources were also expended to secure other required permits and approvals for the South Fork Wind Project.  *Id.* ¶ 21.  Notably, the New York Public Service Commission unanimously approved a Certificate of Environmental Compatibility and Public Need under Article VII of New York's Public Service Law for the onshore components of the South Fork Wind Project after a nearly three-year long environmental review process that involved extensive negotiations with state agencies and other stakeholders and interested parties.  *Id*. ¶ 20.

---

[9]  The DEIS and FEIS are available under the "Environmental Review" tab at https://www.boem.gov/renewable-energy/state-activities/south-fork.

[10]  Both the BOEM ROD and the COP approval are available under the "Construction and Operations Plan" tab at https://www.boem.gov/renewable-energy/state-activities/south-fork.

### 2. Endangered Species Act

BOEM and other cooperating agencies for the South Fork Wind Project conducted an ESA Section 7 consultation on the Project.  16 U.S.C. § 1536; Gearon Decl. ¶ 22.  On October 1, 2021, NMFS issued an ESA Biological Opinion ("BiOp")[11] that assessed the potential effects of construction, operation, maintenance, and decommissioning of the South Fork Wind Project on ESA-listed whales, sea turtles, fish, corals, and designated critical habitat in the Project area.  *Id.* The BiOp concluded the South Fork Wind Project is not likely to adversely affect certain ESA-listed species and is not likely to jeopardize the continued existence of the remaining ESA-listed species (including the North Atlantic right whale).  *Id.*  The BiOp also concluded the South Fork Wind Project would have no effect on the critical habitat designated for the North Atlantic right whale and several other ESA-listed species.  *Id.*  The BiOp included an Incidental Take Statement pursuant to ESA Section 7(b)(4), 16 U.S.C. § 1536(b)(4), and identified the permitted take incidental to the South Fork Wind Project and enforceable mitigation measures and requirements to avoid or minimize impacts to listed species.  *Id.*

### 3. Marine Mammal Protect Act

In March 2019, South Fork Wind submitted an application to NMFS for an Incidental Harassment Authorization ("IHA") for non-lethal take of a small number of marine mammals incidental to construction of the South Fork Wind Project.[12]  Gearon Decl. ¶ 23.  As part of its application, South Fork Wind submitted a 129-page JASCO Applied Sciences report on Underwater Acoustic Modeling of Construction Noise and a 154-page JASCO report on Animal Exposure

---

[11] NMFS, Endangered Species Act Section 7 Consultation Biological Opinion for the South Fork Wind Project (Oct. 1, 2021), https://media.fisheries.noaa.gov/2021-12/SFW_BiOp_OPR1.pdf.

[12] The South Fork Wind Project Construction IHA and associated material are available at https://www.fisheries.noaa.gov/action/incidental-take-authorization-south-fork-wind-llc-construction-south-fork-offshore-wind.

Modeling.  *Id.*  NMFS published a notice of the proposed IHA in the Federal Register on February 5, 2021, and accepted comments on the proposed IHA until March 10, 2021.  *Id.* ¶ 24.  NMFS issued the IHA to South Fork Wind on December 21, 2021, and the IHA was valid from November 15, 2022, through November 14, 2023.[13]  *Id.* at ¶ 25.

### 4.  Coastal Zone Management Act

In 2018, South Fork Wind submitted a CZMA federal consistency certification to the Rhode Island Coastal Resources Management Council ("RI CRMC"), as well as the other relevant state agencies in New York and Connecticut, for review for consistency with the states' enforceable program policies in their approved coastal management programs, in accordance with CZMA regulations at 15 C.F.R. § 930.57(a).  Gearon Decl. ¶ 26; *see also* 15 C.F.R. pt. 930, Subpart D.  Each state agency thereafter concurred in that consistency certification under 15 C.F.R. § 930.62, with RI CRMC issuing its concurrence on July 1, 2021.  Gearon Decl. ¶ 26.

### 5.  National Historic Preservation Act

BOEM's NHPA Section 106 consultation process for South Fork Wind began in the Spring of 2019.  Gearon Decl. ¶ 29.  On May 29, 2019, BOEM extended invitations to consult under NHPA Section 106 to 40 potential consulting parties.  *Id.*  BOEM convened five consulting party meetings between September 29, 2020, and September 30, 2021.  *Id.* ¶ 30.  South Fork Wind participated in every consultation meeting.  *Id.*

BOEM circulated documents and analyses to consulting parties and consulted on the Area of Potential Effect and identification of historic properties.[14]  *Id.* ¶ 31.  BOEM circulated to

---

[13] NMFS Incidental Harassment Authorization (Dec. 21, 2021), https://media.fisheries.noaa.gov/2021-12/SFW_IHA_issued_OPR1.pdf.

[14] For a description of this process, *see* Finding of Adverse Effect for the South Fork Wind Farm and South Fork Export Cable Construction and Operations Plan (Aug. 2021) at 4,

consulting parties for comment its draft Finding of Adverse Effect on May 3, 2021, and its final Finding of Adverse Effect on August 16, 2021. *Id.* ¶ 32. The Finding of Adverse Effect considered historic properties in Newport, Rhode Island, including National Historic Landmark properties such as the Bellevue Avenue Historic District and the Ocean Drive Historic District, and determined that because of distance to the Project and other factors, the Project would result in no adverse effects to these properties. *Id.* ¶ 33. Each of the relevant State Historic Preservation Officers—including Rhode Island's—concurred in BOEM's Finding of Adverse Effect. *Id.* ¶ 34. On August 20, 2021, BOEM circulated its first draft of a Memorandum of Agreement ("South Fork Wind Project MOA") and twice over the following two months, BOEM released a new revised draft South Fork Wind Project MOA and incorporated feedback from the consulting parties. *Id.* ¶ 35.

The final South Fork Wind Project MOA was executed in November 2021 among BOEM, South Fork Wind, all three of the relevant State Historic Preservation Officers (including Rhode Island's), and the federal Advisory Council on Historic Preservation ("Advisory Council").[15] *Id.* ¶ 36. The final South Fork Wind Project MOA memorializes agreements by the signatories to adopt specific avoidance, minimization, and mitigation measures "in order to take into account the effect of the undertaking on historic properties."[16] *Id.* ¶ 37.

---

https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/SFWF_FOE_FINAL_0.pdf.

[15] *See* South Fork Wind Project MOA (Nov. 2023), https://www.boem.gov/sites/default/files/documents/renewable-energy/state-activities/ma-ny-ri-south-fork-moa.pdf.

[16] South Fork Wind Project MOA at 4.

### 6.   Clean Water Act

On December 23, 2020, South Fork Wind filed an application with USACE for a CWA Section 404 and Rivers and Harbors Act of 1899 ("RHA") Section 10 individual permit for construction of the South Fork Wind Project.  Gearon Decl. ¶ 38.  On January 14, 2022, USACE issued the ROD[17] and on January 18, 2022, issued a CWA Section 404 and RHA Section 10 permit to South Fork Wind.[18]  *Id.*  This permit imposes numerous conditions on the Project, including with respect to mitigation and monitoring measures.  *Id.*

### C.   South Fork Wind Financial Obligations and Commercial Commitments

To date, South Fork Wind has incurred financial obligations and commercial commitments well in excess of $1 billion developing, permitting, engineering, and constructing the South Fork Wind Project.  Gearon Decl. ¶¶ 8, 39-40.  South Fork Wind and the Long Island Power Authority ("LIPA") executed a Power Purchase Agreement ("South Fork Wind PPA") in February 2017, with an amendment in March 2017 and second amendment in September 2020.  *Id.* ¶ 7.  Construction of the South Fork Wind Project is complete, and the Project has begun generating electricity and selling this electricity to LIPA under the terms of the South Fork Wind PPA.  *Id.* ¶¶ 6, 7.  South Fork Wind expects to receive millions of dollars each month in revenue from the sale of electricity under the South Fork Wind PPA.  *See id.* ¶ 40.  If the Project is enjoined from operating, South Fork Wind would lose millions of dollars in revenue each month under its PPA and could face PPA termination under certain circumstances.  *Id.*  But South Fork Wind would expect continued operational expenses even if the Project's federal approvals are set aside, as

---

[17] *See* USACE ROD, https://www.nan.usace.army.mil/Portals/37/NAN-2020-01079-EVI%20SOF%2014%20PM%20Sign.pdf.

[18] USACE Permit, https://www.nan.usace.army.mil/Portals/37/NAN-2020-01079%20South%20Fork%20Wind%20Issued%20Permit-Dated%2018%20JAN%202022_1.pdf.

Plaintiffs seek, because the Project expects that safety, environmental, and asset integrity concerns would require continuation of routine maintenance activities.  *See id.* ¶ 42.  And compliance requirements from other federal, state, and local permits and regulations may require ongoing expenditure of Project resources despite lack of electricity generation.  *Id.*  Therefore, only limited reduction in operational expenses would be expected to offset the lack of revenue.  *Id.*

Further, the WTGs are not designed to be stationary extended periods of time once installed and can develop mechanical defects if prevented from operating.  *Id.* ¶ 41.  South Fork Wind's greater than $1 billion investment in the Project would be threatened if the Project operations were enjoined or the Project approvals were vacated by this lawsuit.  *Id.* ¶ 43.

## III.    ARGUMENT

### A.    <u>South Fork Wind Is Entitled to Intervention of Right</u>

Under Rule 24(a)(2), South Fork Wind is entitled to intervene of right in this Case.  An applicant must demonstrate that it has Article III standing to intervene of right.  *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 316 (D.C. Cir. 2015).  Once standing is established, the court then applies a four-factor test, requiring that: (1) the motion to intervene be timely; (2) the applicant claims a legally protected interest; (3) the action, as a practical matter, impairs or impedes that interest; and (4) the potential intervenor's interest cannot adequately be represented by another party to the action.  *Id.* at 320.

South Fork Wind satisfies all requirements for intervention of right, as set forth below.  Courts in this district have granted intervention of right to offshore wind project sponsors in legal challenges to their respective project approvals, including the two related South Fork Wind Project cases pending before this Court and the recently granting Revolution Wind intervention in Plaintiffs' now separate case against Federal Defendants with respect to the Revolution Wind Project approvals.  *See* Apr. 10 Mem. & Order, at 10; *see also Pres. Soc'y of Newport Cnty. v.*

*Haaland,* No. 1:23-cv-03510-APM, Minute Order (D.D.C. Dec. 12, 2023) (J. Mehta) (granting South Fork Wind intervention in challenge to BOEM's Project approvals); *Se. Lighthouse Found. v. Haaland*, No. 1:23-cv-3514-APM, Minute Order (D.D.C. Dec. 6, 2023) (J. Mehta) (granting South Fork Wind intervention in challenge to BOEM's Project approvals) (case later consolidated with 1:23-cv-03510-APM); *Pres. Soc'y of Newport Cnty. v. Haaland*, No. 1:23-cv-03513-RCL, Dkt. 14 (D.D.C. Dec. 8, 2023) (granting Revolution Wind intervention in challenge to BOEM's project approvals); *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022) (granting South Fork Wind intervention in challenge to BOEM's Project approval); *Seafreeze Shoreside, Inc. v. U.S. Dep't of Interior*, No. 1:21-cv-03276-CRC, Minute Order (D.D.C. Jan. 19, 2022) (granting offshore wind development company's motion to intervene in challenge to BOEM's project approval); *Responsible Offshore Dev. Alliance v. U.S. Dep't of the Interior*, No. 1:22-cv-00237-CRC, Mem. Op. and Order (D.D.C. June 27, 2022) (same); *Fisheries Survival Fund v. Jewell*, No. 1:16-cv-02409 (TSC), Minute Order (D.D.C. Jan. 16, 2017) (same); *Pub. Emps. For Env't Resp. v. Bromwich*, No. 1:10-cv-01067-RBW, Minute Order (D.D.C. Sept. 8, 2010) (same).

### 1.      South Fork Wind Has Article III Standing

South Fork Wind has standing to intervene as a defendant in this Case, in which Plaintiffs challenge approvals issued for the construction and operation of the South Fork Wind Project. "The standing inquiry for an intervening-defendant is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability." *Crossroads*, 788 F.3d at 316; *see also Sierra Club v. EPA*, 292 F.3d 895, 898-99 (D.C. Cir. 2002).

South Fork Wind easily satisfies the injury in fact requirement.  In this Case, Plaintiffs challenge the legality of approvals granted by Federal Defendants to South Fork Wind necessary for construction and operation of the Project, which South Fork Wind planned, designed, funded,

built, and owns.  *See* Green Oceans Compl. at 90-91; Gearon Decl. ¶¶ 4, 8, 11, 39-40.  The D.C.

Circuit Court of Appeals has made clear that where a party's activity, product, permit, or license

"is 'an object of the [agency] action (or forgone action) at issue' . . . there should be 'little

question'" regarding the party's standing.  *Sierra Club*, 292 F.3d at 900 (quoting *Lujan v. Defs. of

Wildlife*, 504 U.S. 555, 561-62 (1992)); *see also Crossroads*, 788 F.3d at 317.  Indeed, in Plaintiffs'

challenge to the federal approvals for the Revolution Wind Project, this Court recently found that

"Revolution Wind's Article III standing is self-evident" and that Revolution Wind "easily

established" the necessary elements of standing because Plaintiffs seek vacatur of approvals

necessary for the construction and operation of Revolution Wind's project.  Apr. 10 Mem. &

Order, at 6.  So too for South Fork Wind.

Furthermore, the relief Plaintiffs seek—to vacate and set aside South Fork Wind Project

approvals, *see* Green Oceans Compl. at 90-91; *id*. ¶ 32, which could disrupt the Project's

operation—would impose significant financial harms on South Fork.  *See supra* Section II.C.  For

example, if the South Fork Wind Project is enjoined from operating, South Fork Wind would lose

millions of dollars in revenue each month.  Gearon Decl. ¶ 40.  And such relief could threaten

South Fork Wind's investment of over $1 billion developing the Project.  *Id*. ¶¶ 8, 39, 43.  These

economic injuries clearly constitute cognizable harm sufficient to demonstrate that South Fork

Wind has standing.  *See Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 5 (D.C. Cir. 2017)

("Economic harm to a business clearly constitutes an injury-in-fact. . . . A dollar of economic harm

is still an injury-in-fact for standing purposes.").

Moreover, this litigation threatens South Fork Wind's substantial efforts and investments

in the administrative approval processes for its Project.  *See supra* Section II.B.  Such

"participat[ion] in the administrative process" that culminated in the challenged administrative

action creates an interest sufficient to support intervention.  *See Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397-98 (9th Cir. 1995).

With respect to the causation and redressability requirements for standing, South Fork Wind necessarily satisfies these requirements because the relief Plaintiffs seek would cause the injuries described above.  Where a plaintiff's suit challenges an agency decision that was in the applicant's favor, "it rationally follows [that] the injury is directly traceable to [plaintiffs'] challenge."  *Crossroads*, 788 F.3d at 316.  Such harm would be prevented if the relief Plaintiffs request is denied.

### 2.    This Motion Is Timely

South Fork Wind filed its original motion to intervene in this Case on February 6, 2024, within 21 days after Plaintiffs filed their Complaint and before any responsive pleadings were filed.  *See* Original Motion to Intervene, Dkt. 7.  Judge Lamberth then severed Plaintiffs' claims against South Fork Wind and denied the motion to intervene with respect to South Fork Wind "without prejudice to South Fork Wind moving to intervene in that new docket."  Apr. 10 Mem. & Order, at 6, 10.  The Court opened the new docket on April 17, and on April 18, this Court *sua sponte* consolidated this Case with *Preservation Society of Newport County v. Haaland*, Case No. 1:23-cv-03510-APM (D.D.C.) and *Southeast Lighthouse Foundation v. Haaland*, Case No. 1:23-cv-03514-APM (D.D.C.), and ordered the parties to submit a Joint Status Report ("JSR") by April 29, 2024.  *See Green Oceans v. U.S. Dep't of Interior,* No. 1:24-cv-01087-APM, Minute Order (D.D.C. Apr. 18, 2024) (J. Mehta).  The JSR was filed on April 29, and Plaintiffs do not oppose South Fork Wind's intervention.  Federal Defendants take no position on South Fork Wind's intervention.  South Fork Wind now moves to intervene in the instant Case, which is still before any responsive pleading has been filed.

Intervention will not cause delay, and no party will be in any way prejudiced by the requested intervention at this early stage in the proceedings.  Therefore, this motion is timely.  *See, e.g.*, *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003) (finding motion is timely when filed less than two months after commencement of suit).

### 3.    South Fork Wind Has Multiple Significantly Protectable Interests Relating to the Subjects of This Action

The existence of constitutional standing suffices to show a legally protected interest for purposes of Rule 24.  *See Crossroads*, 788 F.3d at 320 ("[S]ince [the proposed defendant-intervenor] has constitutional standing, it *a fortiori* has 'an interest relating to the property or transaction which is the subject of the action.'" (quoting *Fund for Animals,* 322 F.3d at 735)); *see also Jones v. Prince George's Cnty., Md.*, 348 F.3d 1014, 1018-19 (D.C. Cir. 2003); Apr. 10 Mem. & Order, at 7.  As explained <u>supra</u>, South Fork Wind has significantly protectable interests in: (1) its operations authorized by the challenged permits and approvals; (2) meeting its contractual obligations for operation, including under the South Fork Wind PPA; (3) the considerable time, effort, and cost it has invested in the administrative approval processes and construction of its Project and in the approvals themselves; and (4) financial obligations and potential losses in excess of $1 billion if Plaintiffs succeed in disrupting the ongoing operation of the Project.  *See supra* Sections II.C & III.A.  For all of these reasons, South Fork Wind satisfies the significant protectable interest requirement.

### 4.    Without Intervention, Disposition of the Action Would Impede South Fork Wind's Ability to Protect Its Interests

To satisfy the third part of the Rule 24(a)(2) test, South Fork Wind need only show that an unfavorable disposition of this action "may as a practical matter impair or impede" its ability to protect its interests.  Fed. R. Civ. P. 24(a)(2).  The D.C. Circuit interprets this language to require a court to consider the "practical consequences" of denying intervention to the applicant, including

economic consequences.  *Fund for Animals*, 322 F.3d at 735.  Where, as here, a movant seeks intervention to defend the validity of a government approval it has been granted, there is a clear showing that a decision in the movant's absence would impair its ability to protect that interest. *See, e.g., Friends of the Headwaters v. U.S. Army Corps of Eng'rs*, Civ. No. 21-0189 (CKK), 2021 WL 1061162, at *3 (D.D.C. Mar. 20, 2021) (granting intervention of right where plaintiff's requested relief, if granted, "would as a practical matter impede" intervenor permit holder's "ability to proceed" with its project by requiring the permit holder "to halt construction and incur additional costs associated with delay").

Plaintiffs ask this Court, among other things, to vacate and set aside the South Fork Wind Project's government approvals, including BOEM's COP approval for the Project.  *See* Green Oceans Compl. at 90-91.  Thus, Plaintiffs' action threatens the South Fork Wind Project's approvals and Plaintiffs seek relief that, if granted, would impair South Fork Wind's ability to continue operation of its Project and deliver energy to the electric grid at significant financial loss. *See* Gearon Decl. ¶¶ 39-43.  South Fork Wind's intervention in this action is thus necessary to protect its significant interests in the challenged approvals authorizing the South Fork Wind Project.

### 5.      Existing Parties Will Not Adequately Represent South Fork Wind's Interests

As the D.C. Circuit has explained, "a movant 'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation.'"  *Crossroads*, 788 F.3d at 321 (quoting *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1293 (D.C. Cir. 1980)).  This requirement is "not onerous" and represents a "low" threshold.  *Id.* (quoting *Fund for Animals*, 322 F.3d at 735, 736 n.7).  As this Court recently found in its order granting Revolution Wind intervention, "'[t]he applicant need only show that representation of his interest 'may be'

inadequate, not that representation will in fact be inadequate.'"  Mem. and Order, at 7 (quoting *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009)); *see also Trbovich v. United. Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972).

Although Federal Defendants—agencies that have issued approvals for the Project's construction and operation—and South Fork Wind nominally share the same objective to defend these approvals as to the Project, the broad public interest the government defends is distinct from the more specific interests of South Fork Wind.  Federal Defendants do not share South Fork Wind's interest in generating revenue under the PPA and protecting its extensive financial investments in its Project. *See* Gearon Decl. ¶¶ 39-44.  Federal Defendants' "general interest" in seeing their decisions upheld "does not mean [the parties'] particular interests coincide so that representation by the agency alone is justified." *Am. Horse Prot. Ass'n v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001).

In these circumstances, where an entity has committed over $1 billion in a project and a court-imposed injunction or vacatur of agency approvals could result in the project's failure or significant financial loss, courts have recognized that the government does not adequately represent the specific, narrower economic and other interests of private parties that may be affected by the litigation.  *See, e.g.*, *Hardin*, 600 F. Supp. 2d at 16 (finding a pesticide registrant's "economic and proprietary interests" were not shared by EPA regulators); *Dimond v. Dist. of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986); *Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977) (reversing denial of intervention by rubber and chemical companies because the regulations at issue would have direct impact on their businesses and the decision would likely involve "questions of very technical detail and data").  That inadequate representation is particularly true when—as here—a private-party intervenor asserts a "financial stake in the

outcome" of the action.  *Id.*; *see also Fund for Animals*, 322 F.3d at 736-37 & n.9 (collecting cases recognizing that "governmental entities do not adequately represent the interests of aspiring intervenors").  Federal Defendants may not be able or be motivated to raise the same defenses as South Fork Wind.  Similar to this Court granting Revolution Wind intervention in Plaintiffs' parallel challenge, here "[t]here could be little doubt that Federal Defendants' representation" of South Fork Wind's interests "may be inadequate because the interests of Federal Defendants" and South Fork Wind "are not the same."  Apr. 10 Mem. & Order, at 7-8.

Given the foregoing, South Fork Wind is entitled to intervene of right in this matter pursuant to Rule 24(a)(2).

### B.  Alternatively, the Court Should Grant Permissive Intervention

In the alternative, the Court should grant South Fork Wind permissive intervention as it has met the requirements of Rule 24(b).  Under that rule, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(1)(B).  "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  In applying this discretionary standard, courts consider whether the applicant has "(1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action."  *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

South Fork Wind meets the standard for permissive intervention under Rule 24(b) for many of the same reasons that is entitled to intervene of right.  First, this Court has an independent basis for subject matter jurisdiction over the defenses that South Fork Wind will advance.  Because Plaintiffs' claims arise under the laws of the United States—such as the APA, NEPA, ESA,

MMPA, NHPA, CZMA, and MBTA—and South Fork Wind has Article III standing, *see supra* Section III.A.1, this Court has original jurisdiction.

Second, as explained above, South Fork Wind's motion is timely.  *See supra* Section III.A.2.  Intervention at this early stage of litigation will not delay the proceeding, and South Fork Wind is prepared to meet any schedule set by this Court.

Third, because South Fork Wind will raise defenses directly responsive to Plaintiffs' claims challenging the South Fork Wind approvals under the APA, NEPA, ESA, MMPA, CZMA, MBTA, NHPA, OCSLA, and CWA, South Fork Wind necessarily will assert claims or defenses in common with the main action and satisfy the common question of law or fact requirement for permissive intervention.

Permissive intervention is also appropriate because South Fork Wind's participation in this Case will significantly contribute to full development of the underlying factual issues in the suit. As the Project's developer, South Fork Wind was a key participant in all of the federal approval processes for its Project implicated by Plaintiffs' claims in this Case, and it is uniquely positioned to provide relevant information to the Court to address the merits and ramifications of Plaintiffs' arguments as to its own Project.  As a result, South Fork Wind's participation in this action as an intervenor would promote a fair and full adjudication of Plaintiffs' claims for the South Fork Wind Project.

### C.   <u>South Fork Wind Should Be Permitted to File Its Answer by the Same Deadline as Federal Defendants</u>

South Fork Wind respectfully seeks leave to file its Answer or other responsive pleading pursuant to Federal Rule of Civil Procedure 24(c) and Local Rule 7(j) by the same deadline as Federal Defendants, or three days after intervention is granted, whichever is later.  South Fork Wind's Motion informs the Court and the parties of the nature and basis for its need to participate

in this Case, such that the Court may adequately evaluate the issues and grant South Fork Wind intervention without a corresponding pleading.  Deferring the deadline for South Fork Wind's responsive pleading to align with Federal Defendants' deadlines will further judicial economy by not prematurely requiring such filings until Federal Defendants are also required to file.  Courts have granted such requests frequently.  *See, e.g.,* Apr. 10 Mem. & Order, at 8-9, 11 (collecting cases); *Am. Soybean Ass'n v. EPA*, No. 1:20-cv-03190, Dkt. 20 (D.D.C. Nov. 13, 2020) (granting motion to intervene and to defer filing responsive pleading under Rule 24(c) to same date as Federal Defendant); *Nat'l Tr. for Historic Pres. v. Semonite*, No. 1:17-cv-01574-RCL, Dkt. 24 (D.D.C. Sept. 12, 2017) (granting intervention and allowing intervenor's answer to later be filed on same date as federal defendants' answer); *Kinsella v. BOEM*, No. 1:22-cv-02147-JMC, Dkt. 43 (D.D.C. Nov. 7, 2022) (granting South Fork Wind intervention and ordering it to file its Answer or other responsive pleading under Rule 24(c) on same date as federal defendants); *Save Long Beach Island v. U.S. Dep't of Commerce*, No. 3:23-cv-01886-RK-JBD, Dkt. 18 (D.N.J. May 19, 2023) (granting Ørsted intervention and ordering it to file its Answer or other responsive pleading under Rule 24(c) on same date as federal defendants).  Granting this request will not cause any delay in this litigation, as Federal Defendants have not yet filed their own responsive pleading.

## IV.    CONCLUSION

For the foregoing reasons, South Fork Wind respectfully requests that the Court grant its motion to intervene of right in this Case or, in the alternative, to grant permissive intervention and that South Fork Wind be permitted to file its responsive pleading under Rule 24(c) on the same date as Federal Defendants' deadline for responding to Plaintiffs' Complaint or three days after intervention is granted, whichever is later.

Dated:  May 1, 2024     Respectfully submitted,

By */s/* Janice M. Schneider

 Janice M. Schneider (D.C. Bar No. 472037)
 Stacey L. VanBelleghem (D.C. Bar No. 988144)
 Devin M. O'Connor (D.C. Bar No. 1015632)
 LATHAM & WATKINS LLP
 555 11th Street NW, Suite 1000
 Washington, D.C. 20004
 Tel:  (202) 637-2200
 Fax:  (202) 637-2201
 Email: janice.schneider@lw.com
   stacey.vanbelleghem@lw.com
   devin.o'connor@lw.com

 *Counsel for Proposed Defendant-Intervenor*
 *South Fork Wind, LLC*