**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| PRESERVATION SOCIETY OF NEWPORT COUNTY, | ) ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No.: 1:23-cv-03510-APM |
| | ) | |
| DEB HAALAND, *et al.*, | ) | Case No.: 1:23-cv-03514-APM |
| | ) | |
| *Defendants*, | ) | Case No.: 1:24-cv-01087-APM |
| | ) | |
| and | ) | |
| | ) | |
| SOUTH FORK WIND, LLC, | ) | |
| | ) | |
| *Defendant-Intervenor*. | ) | |
| | ) | |

**FEDERAL DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
*GREEN OCEANS* PLAINTIFFS' FIRST AMENDED COMPLAINT (ECF No. 34)**

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................................. 1

II.     BACKGROUND ............................................................................................................... 2

    A.      Legal Background .............................................................................................. 2

        1.    Fixing America's Surface Transportation Act............................................. 2

        2.    The Outer Continental Shelf Lands Act...................................................... 3

        3.    National Environmental Policy Act ............................................................. 3

        4.    Endangered Species Act............................................................................... 4

        5.    Marine Mammal Protection Act................................................................... 5

        6.    Migratory Bird Treaty Act ........................................................................... 6

        7.    Clean Water Act ........................................................................................... 7

        8.    Coastal Zone Management Act ..................................................................... 8

    B.      Factual Background ............................................................................................ 9

        1.    Agency review and approvals....................................................................... 9

        2.    Procedural background ............................................................................... 12

III.    STANDARD OF REVIEW ............................................................................................ 13

IV.     ARGUMENT................................................................................................................... 15

    A.      FAST-41 bars Plaintiffs' claims...................................................................... 15

        1.    Plaintiffs did not file their Amended Complaint within the statute of
              limitations .................................................................................................. 16

        2.    Plaintiffs fail to allege that they submitted sufficient comments
              during the environmental review process .................................................. 18

    B.      Plaintiffs lack standing..................................................................................... 19

        1.    Plaintiffs fail to adequately allege injury-in-fact for any claim................ 20

        2.    Plaintiffs do not adequately allege causation............................................ 22

        3.    Plaintiffs' claims are not redressable ........................................................ 23

i

a.    Plaintiffs' CWA claim is not redressable....................................... 24

b.    Plaintiffs' MMPA claim is not redressable because the
Incidental Harassment Authorization for the Project has
expired................................................................................................ 26

C.    Plaintiffs' ESA claim must be dismissed because Plaintiffs failed to
provide the required sixty-day notice of intent to sue..................................... 28

1.    Plaintiffs did not give adequate notice of the ESA claims in the
Original Complaint ................................................................................ 29

2.    The February 16, 2024, intent to sue letter did not give adequate
notice of the reasons why reinitiation of consultation was required......... 32

D.    Plaintiffs' OCSLA claim should be dismissed for failure to provide
statutorily required pre-suit notice ................................................................. 34

E.    Plaintiffs fail to state a claim under the MBTA .............................................. 35

F.    Plaintiffs fail to state a plausible claim for relief for their CZMA claim......... 37

1.    Plaintiffs' claims should be dismissed because they fall outside the
"zone of interests" sought to be protected by the CZMA.......................... 37

2.    Plaintiffs' CZMA claim should be dismissed because it fails to state
a violation of law by BOEM.................................................................... 40

V.    CONCLUSION............................................................................................................ 42

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abhe & Svoboda, Inc. v. Chao*,
   508 F.3d 1052 (D.C. Cir. 2007) ........................................................................... 10, 15

*Air Excursions LLC v. Yellen*,
   66 F.4th 272 (D.C. Cir. 2023) ...................................................................................... 19

*Allco Renewable Energy Ltd. v. Haaland*,
   No. 21-cv-11171, 2022 WL 2373914 (D. Mass. June 30, 2022) ................................. 35

*Allen v. Wright*,
   468 U.S. 737 (1984) ..................................................................................................... 23

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ..................................................................................... 14, 20, 40

*\*Basel Action Network v. Maritime Admin.*,
   370 F. Supp. 2d 57 (D.D.C. 2005) ...................................................................... 31, 35

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 14, 15

*Bennett v. Spear*,
   520 U.S. 154 (1997) ......................................................................................... 17, 29

*Cal. Coastal Comm'n v. Granite Rock Co.*,
   480 U.S. 572 (1987) ..................................................................................................... 39

*Cary v. Hall*,
   No. C 05-4363 VRW, 2006 WL 6198320 (N.D. Cal. Sept. 30, 2006) ...................... 31

*Case v. Ivey*,
   542 F. Supp. 3d 1245 (M.D. Ala. 2021) ...................................................................... 27

*Center for Biological Diversity v. Haaland*,
   No. 20-573 (EGS), 2023 WL 2401662 (D.D.C. Mar. 8, 2023) ................................. 33

*Cephas v. MVM, Inc.*,
   403 F. Supp. 2d 17 (D.D.C. 2005) ...................................................................... 10, 16

*City of Sausalito v. O'Neill*,
   386 F.3d 1186 (9th Cir. 2004) .................................................................................... 39

*Concilio De Salud Integral De Loiza, Inc. v. U.S. Dep't of Health & Human Servs.*,
   538 F. Supp. 2d 139 (D.D.C. 2008) ............................................................................ 14

*Conservation Force v. Salazar*,
   715 F. Supp. 2d 99 (D.D.C. 2010) ............................................................................. 33

iii

*Ctr. for Biological Diversity v. Tidwell*,
239 F. Supp. 3d 213 (D.D.C. 2017) .................................................................. 10, 15

*Ctr. for Biological Diversity v. U.S. Forest Serv.*,
No. CV-23-00715-PHX-JAT, 2023 WL 7166544 (D. Ariz. Oct. 31, 2023)............................. 27

*Dep't of Transp. v. Pub. Citizen*,
541 U.S. 752 (2004)............................................................................................. 3

*\*Duke Energy Field Serv. Assets, LLC v. FERC*,
150 F. Supp. 2d 150 (D.D.C. 2001) ................................................................ 34, 35

*Enos v. Marsh*,
616 F. Supp. 32 (D. Haw. 1984) ......................................................................... 9, 41

*Enos v. Marsh*,
769 F.2d 1363 (9th Cir. 1985)............................................................................... 9

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
36 F.4th 850 (9th Cir. 2022)................................................................................. 41

*Fisheries Survival Fund v. Haaland*,
2021 WL 2206426 (D.C. Cir. May 20, 2021) ....................................................... 34

*Fisheries Survival Fund v. Jewell*,
No. 16-CV-2409 (TSC), 2018 WL 4705795 (D.D.C. Sept. 30, 2018) ..................... 35

*Fletcher v. U.S. Dep't of Justice*,
17 F. Supp. 3d 89 (D.D.C. 2014) ......................................................................... 14

*Forest Guardians v. U.S. Bureau of Reclamation*,
462 F. Supp. 2d 1177 (D.N.M. 2006) ................................................................... 31

*\*Food & Drug Admin. v. Alliance for Hippocratic Med.*,
__ S. Ct. __, No. 23-235, 2024 WL 2964140, at *6 (June 13, 2024) ................. 19, 22

*\*Friends of Animals v. Ashe*,
808 F.3d 900 (D.C. Cir. 2015) ................................................................. 28, 31, 33

*Friends of Animals v. Salazar*,
670 F. Supp. 2d 7 (D.D.C. 2009) .................................................................... 35, 41

*Friends of the Boundary Mtns. v. Army Corps. of Eng'rs*,
24 F. Supp. 3d 105 (D. Me. 2014) ....................................................................... 37

*Friends of the Capital Crescent Trail v. FTA*,
255 F. Supp. 3d 60 (D.D.C. 2017) .................................................................. 36, 37

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000)............................................................................................ 24

*Garcia v. Cecos Int'l, Inc.*,
761 F.2d 76 (1st Cir. 1985) ................................................................................. 35

iv

*George v. NYC Dep't of City Plan.,*
  436 F.3d 102 (2d Cir. 2006) .......................................................................................... 38

*Govt. of Province of Manitoba v. Zinke,*
  849 F.3d 1111 (D.C. Cir. 2017) ................................................................................. 4, 17

*Hallstrom v. Tillamook Cnty.,*
  493 U.S. 20 (1989) .................................................................................................... 28, 30

*Harris v. Sebelius,*
  932 F. Supp. 2d 150 (D.D.C. 2013) ............................................................................... 14

*Herbert v. Nat'l Acad. of Sciences,*
  974 F.2d 192 (D.C. Cir. 1992) ....................................................................................... 14

*Humane Soc'y v. Glickman,*
  217 F.3d 882 (D.C. Cir. 2000) .................................................................................... 7, 36

*Indian River Cnty. v. DOT,*
  945 F.3d 515 (D.C. Cir. 2019) ....................................................................................... 38

*Jerome Stevens Pharm., Inc. v. FDA,*
  402 F.3d 1249 (D.C. Cir. 2005) ..................................................................................... 14

*Knaust v. City of Kingston, N.Y.,*
  No. 96-cv-601, 1999 WL 31106 (N.D.N.Y. Jan. 15, 1999) ......................................... 42

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
  511 U.S. 375 (1994) ....................................................................................................... 13

*Latson v. Holder,*
  82 F. Supp. 3d 377 (D.D.C. 2015) ................................................................................. 41

*Lexmark Int'l, Inc., v. Static Control Components, Inc.,*
  572 U.S. 118 (2014) ....................................................................................................... 38

*\*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) ................................................................................... 19, 20, 21, 25

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990) .................................................................................................. 21, 23

*Matter of Defend H20 v. Town Bd. of the Town of E. Hampton,*
  147 F. Supp. 3d 80 (E.D.N.Y. 2015) ............................................................................. 38

*Murthy v. Missouri,*
  __ S. Ct. __, No. 23-411, 2024 WL 3165801, at *9 (June 24, 2024) ....................... 19

*Narragansett Indian Tribal Historic Pres. Off. v. FERC,*
  949 F.3d 8 (D.C. Cir. 2022) ........................................................................................... 25

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,*
  539 F. Supp. 2d 331 (D.D.C. 2008) ............................................................................... 14

*Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*,
 170 F. Supp. 3d 6 (D.D.C. 2016) ...................................................................... 24, 25

*Ord v. District of Columbia*,
 587 F.3d 1136 (D.C. Cir. 2009)................................................................................ 14

*Protect Our Cmtys. Found. v. Jewell,*
 825 F.3d 571 (9th Cir. 2016).................................................................................... 37

*Protect Our Cmtys. Found. v. Jewell*,
 No. 13CV575JLS (JMA), 2014 WL 1364453 (S.D. Cal. March 25, 2014) ............. 37

*Pub. Employees for Envtl. Responsibility v. Beaudreau*,
 25 F. Supp. 3d 67 (D.D.C. 2014) ............................................................................. 37

*Rempfer v. Sharfstein*,
 583 F.3d 860 (D.C. Cir. 2009) ................................................................................. 13

*Research Air, Inc. v. Norton*,
 No. CIV.A. 05-623 (RMC), 2006 WL 508341 (D.D.C. Mar. 1, 2006)..................... 33

*Save Long Beach Island v. U.S. Dep't of Commerce*,
 Civil Action No. 23-1886 (RK) (JBD), 2024 WL 863428 (D.N.J. Feb. 29, 2024).... 27

*Seattle Audubon Soc'y v. Evans*,
 952 F.2d 297 (9th Cir. 1991).................................................................................... 36

*Sec'y of the Interior v. California*,
 464 U.S. 312 (1984)............................................................................................. 8, 41

*Serrano–Lopez v. Cooper*,
 193 F. Supp. 2d 424 (D.P.R. 2002) .................................................................... 39, 40

*Sierra Club v. Jewell*,
 764 F.3d 1 (D.C. Cir. 2014) ............................................................................... 24, 41

*Sierra Club v. U.S. Army Corps of Eng'rs*,
 277 Fed. App'x. 170 (3d Cir. 2008)......................................................................... 25

*Sierra Club v. U.S. Army Corps of Eng'rs*,
 803 F.3d 31 (D.C. Cir. 2015) ..................................................................................... 3

*Sierra Club v. U.S. Dep't of Energy*,
 825 F. Supp. 2d 142 (D.D.C. 2011) ......................................................................... 26

*Silver v. IRS*,
 531 F. Supp. 3d 346 (D.D.C. 2021) ......................................................................... 25

*State of Cal., By & Through Brown v. Watt*,
 683 F.2d 1253 (9th Cir. 1982).................................................................................. 39

*State of N.J. Dep't of Env't Prot. & Energy v. Long Island Power Auth.*,
 30 F.3d 403 (3d Cir. 1994)....................................................................................... 38

*Steel Co. v. Citizens for a Better Env't,*
  523 U.S. 836 (1998 ................................................................................................. 13, 27

*Summers v. Earth Island Inst.,*
  555 U.S. 488, (2009) .................................................................................................... 19

*Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation,*
  143 F.3d 515 (9th Cir. 1998) ....................................................................................... 33

*Town of N. Hempstead v. Vill. of N. Hills,*
  482 F. Supp. 900 (E.D.N.Y. 1979) ............................................................................. 38

*Town of Southold v. Wheeler,*
  48 F.4th 67 (2d Cir. 2022) ........................................................................................... 38

*United States v. Philip Morris, Inc.,*
  116 F. Supp. 2d 131 (D.D.C. 2000) ............................................................................ 14

*Vill. of Bensenville v. FAA,*
  457 F.3d 52 (D.C. Cir. 2006) ...................................................................................... 25

*Warth v. Seldin,*
  422 U.S. 490 (1975) ..................................................................................................... 14

*Western Watersheds Project v. Interior Board of Land Appeals,*
  62 F.4th 1293 (10th Cir. 2023) ............................................................................... 27, 28

**Statutes**

16 U.S.C. § 1371(a) ............................................................................................................ 5

16 U.S.C. § 1451 ................................................................................................................ 8

16 U.S.C. § 1452(2) ........................................................................................................... 8

16 U.S.C. § 1454 ................................................................................................................ 8

16 U.S.C. § 1455 ................................................................................................................ 8

16 U.S.C. § 1456 .............................................................................................................. 38

16 U.S.C. § 1456(c) .......................................................................................................... 39

16 U.S.C. § 1456(c)(1) ................................................................................................. 40, 41

16 U.S.C. § 1456(c)(1)(A) .............................................................................................. 8, 9

16 U.S.C. § 1456(c)(3)(B) ............................................................................................... 39

16 U.S.C. § 1532(15) ......................................................................................................... 4

16 U.S.C. § 1536 ................................................................................................................ 4

16 U.S.C. § 1536(a)(2) ....................................................................................................... 4

16 U.S.C. § 1536(o) ........................................................................................................... 5

16 U.S.C. § 1540(g)(1) .................................................................................................. 5

16 U.S.C. § 1540(g)(2)(A).................................................................................... 28, 31

16 U.S.C. § 703(a) .................................................................................................. 6, 36

16 U.S.C. § 707(a) ...................................................................................................... 7

33 U.S.C. § 1251(a) .................................................................................................... 7

33 U.S.C. § 1311(a) .................................................................................................... 8

33 U.S.C. § 1344........................................................................................................ 12

33 U.S.C. § 1362(8) .................................................................................................... 7

33 U.S.C. § 403 .......................................................................................................... 12

42 U.S.C. § 4370m(3) ................................................................................................ 16

42 U.S.C. § 4370m–6(a) ............................................................................................ 15

42 U.S.C. § 4370m-6(a)(1) ................................................................................. 2, 3, 15

43 U.S.C. § 1331(a) .................................................................................................... 10

43 U.S.C. § 1337(p)(1)(C) .......................................................................................... 3

43 U.S.C. § 1337(p)(8) ............................................................................................... 3

5 U.S.C. § 702............................................................................................................ 7, 38

5 U.S.C. § 704............................................................................................................ 7, 38

**Rules**

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 13

Fed. R. Civ. P. 12(b)(6) ............................................................................................. 14

**Regulations**

15 C.F.R. § 930.41 .................................................................................................... 39

30 C.F.R. § 585 .......................................................................................................... 3

30 C.F.R. § 585.200(a)(1) .......................................................................................... 3

30 C.F.R. § 585.210 .................................................................................................... 3

30 C.F.R. § 585.211 .................................................................................................... 10

30 C.F.R. § 585.215 .................................................................................................... 3

33 C.F.R. § 320 .......................................................................................................... 8

33 C.F.R. § 320.4(a)(1) .............................................................................................. 8

33 C.F.R. § 328.3 ....................................................................................................... 7

33 C.F.R. § 328.4(a) ................................................................................................ 7

40 C.F.R. § 230 ...................................................................................................... 8

40 C.F.R. § 230.11 ................................................................................................. 8

40 C.F.R. § 230.2(b) .............................................................................................. 8

50 C.F.R. § 10.12 .............................................................................................. 6, 36

50 C.F.R. § 17.2(b) ................................................................................................ 4

50 C.F.R. § 21 ........................................................................................................ 7

50 C.F.R. § 216.3 ............................................................................................... 5, 6

50 C.F.R. § 402 ...................................................................................................... 4

50 C.F.R. § 402.01(b) ............................................................................................ 4

50 C.F.R. § 402.14 ................................................................................................. 4

50 C.F.R. § 402.14(g) ............................................................................................ 4

50 C.F.R. § 402.16 ................................................................................................. 5

50 C.F.R. § 402.16(a)(2) ................................................................................ 28, 32

## Other Authorities

74 Fed. Reg. 19,638 (Apr. 29, 2009) ..................................................................... 3

78 Fed. Reg. 33,908 (June 5, 2013) ................................................................ 10, 30

86 Fed. Reg. 67,969 (Nov. 30, 2021) ......................................................... 11, 16, 17

86 Fed. Reg. 8,490 (Feb. 5, 2021) ........................................................................ 15

87 Fed. Reg. 806 (Jan. 6, 2022) ............................................................................ 16

89 Fed. Reg. 24,810 (Apr. 9, 2024) ...................................................................... 17

## I.      INTRODUCTION

The South Fork Wind Energy Project ("Project") is the first fully operational commercial-scale offshore wind energy project approved in the United States. The Project consists of twelve wind turbines nineteen miles southeast of Block Island, Rhode Island, and thirty-five miles east of Montauk Point, New York. Intervenor-Defendant South Fork Wind, LLC ("South Fork") completed construction of the Project and the Project became fully operational in March 2024. It now provides clean energy to approximately 70,000 homes and businesses on Long Island, New York, and represents a significant milestone in the United States' progress toward a clean energy future.

Plaintiffs' Amended Complaint challenges agency actions taken by the Bureau of Ocean Energy Management ("BOEM"), the National Marine Fisheries Service ("NMFS"), and the United States Army Corps of Engineers (the "Corps"). *See* 1st Am. Compl. to Reverse and Set Aside Final Agency Action, ECF No. 34 ("Am. Compl."). Plaintiffs' Amended Complaint should be dismissed for several reasons.

First, the Fixing America's Surface Transportation Act ("FAST-41") bars most of Plaintiffs' claims. All of Plaintiffs' claims against BOEM and NMFS are barred because, contrary to the statutory requirement, Plaintiffs did not file suit within two years of the joint Record of Decision ("ROD") approving those agencies' actions related to the South Fork Project. And additionally, because Plaintiffs (except Plaintiff Responsible Offshore Development Alliance and Plaintiff Rich Hittinger) did not comment during the environmental review process, FAST-41 prevents them from challenging Federal Defendants' decision-making.

Second, Plaintiffs lack standing to bring their claims. The Amended Complaint does not adequately allege that Plaintiffs (or any of the organizational Plaintiffs' members) have suffered or will suffer an injury-in-fact that is concrete and particularized. Nor do Plaintiffs adequately

1

allege causation or redressability, particularly given that the Project has been completed and is operational.

Third, Plaintiffs failed to comply with the Endangered Species Act's ("ESA") mandatory 60-day notice provision, requiring dismissal of parts of the Fourth Cause of Action.

Fourth, Plaintiffs also failed to comply with the Outer Continental Shelf Land Act's ("OCSLA") mandatory 60-day notice provision, requiring dismissal of the Second Cause of Action.

Fifth, Plaintiffs' Migratory Bird Treaty Act ("MBTA") claim fails to state a claim on which relief can be granted because BOEM is not required to obtain MBTA authorization when it acts in a regulatory capacity.

Sixth, Plaintiffs are not within the Coastal Zone Management Act's ("CZMA") zone of interest and, even if they were, the Amended Complaint does not state a viable claim for relief or any violation of law by Federal Defendants.

The *Green Oceans* Amended Complaint should be dismissed.

## II.    BACKGROUND

### A.    Legal Background

#### 1.    Fixing America's Surface Transportation Act

FAST-41 provides that claims seeking judicial review of any authorization issued by a federal agency for a covered project "shall be barred" unless several conditions are met. 42 U.S.C. § 4370m-6(a)(1). First, claims must be filed within two years of publication in the Federal Register "of notice of final agency action on the authorization." *Id.* § 4370m-6(a)(1)(A). Second, "in the case of an action pertaining to an environmental review conducted under NEPA," the party bringing suit must have submitted a comment during the environmental review and "any

2

commenter [must have] filed a sufficiently detailed comment so as to put the lead agency on notice of the issue on which the party seeks judicial review." *Id.* § 4370m-6(a)(1)(B).

### 2.    The Outer Continental Shelf Lands Act

Offshore wind development seaward of states' boundaries occurs only when authorized under the OCSLA. Congress amended OCSLA in 2005 to authorize the Secretary of the Interior to issue leases to "support production, transportation, storage, or transmission of energy from sources other than oil and gas," which includes wind energy. Energy Policy Act of 2005, 43 U.S.C. § 1337(p)(1)(C). BOEM regulations govern offshore renewable energy development. 43 U.S.C. § 1337(p)(8); Renewable Energy and Alternate Uses of Existing Facilities on the Outer Continental Shelf, 74 Fed. Reg. 19,638 (Apr. 29, 2009); 30 C.F.R. Part 585. After identifying "wind energy areas" for leasing, 30 C.F.R. §§ 585.210, 585.211, BOEM may offer the identified areas or portions of those areas for lease sale via auction. 30 C.F.R. §§ 585.215, 585.216. Development of a lease, however, can only occur if BOEM approves a site assessment plan and, later, a Construction and Operations Plan ("COP"). 30 C.F.R. §§ 585.200(a)(1), 585.600, 585.605–585.613 (site assessment plan requirements), 585.620–585.628 (COP requirements).

### 3.    National Environmental Policy Act

"NEPA requires the federal government to identify and assess in advance the likely environmental impact of its proposed actions, including its authorization or permitting of private actions." *Sierra Club v. U.S. Army Corps of Eng'rs*, 803 F.3d 31, 36 (D.C. Cir. 2015) (citing *Dep't of Transp. v. Pub. Citizen,* 541 U.S. 752, 756–57 (2004)). NEPA's dual purpose is to ensure that agencies make informed decisions that consider the environmental impact of their actions, and that the public is informed of that impact and can participate in the decision-making process. *Id.* When, as here, an agency prepares an Environmental Impact Statement ("EIS"), the agency

3

issues a record of decision ("ROD"), which constitutes final agency action. *Govt. of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1115 (D.C. Cir. 2017).

### 4.    Endangered Species Act

Section 7 of the ESA provides that each federal agency must, in consultation with the U.S. Fish and Wildlife Service ("FWS") and/or NMFS (the "consulting agencies"),[1] "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification" of any designated critical habitat for listed species. 16 U.S.C. § 1536(a)(2). The ESA and its implementing regulations set out a detailed consultation process for evaluating and documenting a project's effects on Federally listed threatened and endangered species and designated critical habitat and ultimately determining whether those effects will result in jeopardy or destruction or adverse modification. 16 U.S.C. § 1536; 50 C.F.R. Part 402.

If the agency's action may affect and is likely to adversely affect a listed species or designated critical habitat, then the agency must engage in formal consultation which concludes when the consulting agency (here, NMFS) issues a biological opinion. 50 C.F.R. § 402.14. A biological opinion includes the consulting agency's determination as to whether the effects of the action will cause jeopardy to any listed species or destruction or adverse modification to designated critical habitat; and, if incidental take of any species is anticipated, includes an incidental take statement that specifies the extent or amount of incidental take and specifies measures that are necessary and appropriate to minimize the effects of take. 50 C.F.R.

---

[1] The Secretaries of the Interior and Commerce are responsible for implementing the ESA and they have delegated their respective responsibilities to FWS and NMFS. 16 U.S.C. § 1532(15); 50 C.F.R. § 402.01(b). In general, FWS is the consulting agency regarding terrestrial and freshwater species, and NMFS is the consulting agency regarding most marine species and anadromous fish. *See* 50 C.F.R. §§ 17.2(b), 17.11, 402.01(b).

§ 402.14(g)–(i). Any incidental take that occurs consistent with the specified measures in an incidental take authorization issued under the MMPA is exempt from ESA Section 9's prohibition on take of listed species. 16 U.S.C. § 1536(o); *see* Section II.A.5, *infra*. A biological opinion also includes a statement concerning the circumstances under which consultation must be reinitiated. 50 C.F.R. § 402.16.

The ESA contains a citizen suit provision that allows any person to commence a civil suit on their own behalf to enjoin any person, including the United States and any of its agencies, who is alleged to be in violation of any provision of the ESA or its implementing regulations. 16 U.S.C. § 1540(g)(1). A citizen suit may be commenced after 60 days' written notice of the alleged violation has been given to the Secretaries of Commerce and the Interior, and to any alleged violator. *Id*. § 1540(g)(2)(A).

5.    **Marine Mammal Protection Act**

Subject to certain exceptions, the Marine Mammal Protection Act ("MMPA") establishes a general "moratorium" prohibiting the taking or importation of marine mammals. 16 U.S.C. § 1371(a). Under the MMPA, the term "take" means "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." *Id*. § 1362 (13); 50 C.F.R. § 216.3.

The MMPA provides an exception to the moratorium on taking marine mammals, under which, upon request "by [U.S. citizens] who engage in a specified activity . . . within a specific geographic region, [NMFS] shall authorize . . . the incidental, but not intentional, taking . . . of small numbers of marine mammals of a species or population stock . . . if [NMFS] finds that such [taking] . . . will have a negligible impact on such species or stock." 16 U.S.C.

§ 1371(a)(5)(D)(i); *see also id.* § 1371(a)(5)(A)(i).[2] NMFS's authorization of incidental take

under this exception is referred to as an Incidental Take Authorization ("ITA").

There are two types of ITAs that NMFS may issue: (1) an Incidental Harassment

Authorization ("IHA"), which authorizes taking by "harassment" only (meaning it does not

authorize serious injury or mortality) and is valid for up to one year, *see id.* § 1371(a)(5)(D)(i);

and (2) an Incidental Take Regulation, which together with a Letter of Authorization authorizes

incidental take for a specified activity for up to five years, *see id.* 1371(a)(5)(A)(i). When issuing

either type of ITA, the MMPA directs NMFS to prescribe: (1) the permissible methods of take

pursuant to the activity and "other means of effecting the least practicable impact" on the

affected species or stock and its habitat; and (2) requirements pertaining to the monitoring and

reporting of such take. *Id*. §§ 1371(a)(5)(D)(ii)(I)–(III); 1371(a)(5)(A)(i)(I).

The ITA issued for the Project and challenged in the Amended Complaint is an IHA.

### 6.    Migratory Bird Treaty Act

The Migratory Bird Treaty Act ("MBTA") provides that, "[u]nless and except as

permitted by regulations" promulgated by the Secretary of the Interior, "it shall be unlawful . . .

to pursue, hunt, take, capture, kill, [or] attempt to take, capture, or kill . . . any migratory bird . . .

included in the terms of the conventions between the United States and Great Britain [on behalf

of Canada] . . . [Mexico] . . . Japan . . . and the [Soviet Union]." 16 U.S.C. § 703(a). Regulations

implementing the MBTA explain that the term "take" means to "pursue, hunt, shoot, wound, kill,

trap, capture, or collect." 50 C.F.R. § 10.12. The MBTA further provides that "any person,

---

[2] The Secretary of Commerce has delegated authority to NMFS Office of Protected Resources to implement the MMPA. *See* Department of Commerce Organizational Orders (DOO) 25-5 § 6.04 (May 4, 2015).

association, partnership, or corporation" is "guilty of a misdemeanor" if they "violate any provisions" of the Act or any implementing regulation. 16 U.S.C. § 707(a).

The Secretary of the Interior administers the MBTA through FWS. Under the MBTA regulations, FWS may permit the take of migratory birds in certain circumstances not relevant here. *See* 50 C.F.R. pt. 21. The regulations do not establish a comprehensive permitting scheme for the take of migratory birds incidental to other lawful activities. Nor do the statute or regulations mandate that a federal agency obtain a permit prior to authorizing third-party activities that may incidentally take migratory birds. *See id.*

The MBTA does not contain a citizen-suit provision that allows private citizens to bring enforcement suits against federal agencies or other third parties. However, the D.C. Circuit has held that the MBTA prohibits federal agencies from directly taking migratory birds without authorization and that persons challenging agency action allegedly taken in violation of the MBTA may bring suit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 702, 704. *See Humane Soc'y v. Glickman*, 217 F.3d 882, 888 (D.C. Cir. 2000).

### 7.    Clean Water Act

Congress enacted the Clean Water Act ("CWA") "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Section 404 of the CWA establishes a program to regulate the discharge of dredged or fill material into "navigable waters." *See id.* § 1344 (Section 404 program). "Navigable waters," for purposes of Section 404, means "waters of the United States, including the territorial seas." *Id.* § 1362(7); *see also* 33 C.F.R. § 328.3 (definition of "waters of United States"). The "territorial seas" generally extend seaward three nautical miles from the coast to the open sea but may extend three miles seaward from elsewhere, in the case of bays, inlets or islands. 33 U.S.C. § 1362(8); 33 C.F.R. § 328.4(a).

Section 404 of the CWA authorizes the Secretary of the Army, through the Corps, to issue permits for the discharge of dredged or fill material into waters of the United States when certain conditions are met. 33 U.S.C. §§ 1311(a), 1344. The Corps issues these permits under the guidance and requirements imposed by its regulations, 33 C.F.R. Part 320, as well as the CWA Section 404(b)(1) Guidelines developed by the U.S. Environmental Protection Agency ("EPA") and the Corps, codified at 40 C.F.R. Part 230. The Section 404(b)(1) Guidelines apply only to "waters of the United States." *See* 40 C.F.R. §§ 230.2(b), 230.3(o), 120.2(a). Corps regulations specify that the "decision whether to issue a permit will be based on an evaluation of the probable impacts, including cumulative impacts, of the proposed activity and its intended use on the public interest." 33 C.F.R. § 320.4(a)(1). And the Guidelines similarly require the Corps to determine the potential impacts (including cumulative impacts) of proposed discharges on "waters of the United States." 40 C.F.R. § 230.11.

### 8.    Coastal Zone Management Act

In 1972, Congress enacted the CZMA, 16 U.S.C. § 1451 *et seq.*, "to encourage and assist states to develop[] and implement[] management programs to achieve wise use of the land and water resources of the coastal zone." 16 U.S.C. § 1452(2); *see also Sec'y of the Interior v. California*, 464 U.S. 312, 316 (1984). "Through a system of grants and other incentives, the CZMA encourages each coastal state to develop a coastal management plan" ("CMP"). *See Sec'y of the Interior*, 464 U.S. at 316; *see also* 16 U.S.C. §§ 1454–55. Once a state's CMP has been approved, federal agencies conducting activities "within or outside the coastal zone" are required to provide the relevant state with a "determination" that the activity "shall be carried out in a manner which is consistent to the maximum extent practicable with the enforceable policies of approved State management programs." 16 U.S.C. § 1456(c)(1)(A), (C).

If (as here) the federal agency is not taking the action itself, and instead is approving a proposed plan or issuing a federal license or permit, then the applicant will conduct the consistency review and include a "consistency certification" in its application confirming that the proposed activity complies with the affected state's coastal management program. *Id.* § 1456(c)(3)(A). Once an applicant issues its consistency certification, the relevant state "agency shall notify the federal agency" whether it either concurs or objects to the applicant's certification. *Id.* If the state agency concurs, the federal agency can presume that the proposed activity complies with the state's coastal management program. *See Enos v. Marsh*, 616 F. Supp. 32, 63–64 (D. Haw. 1984), *aff'd*, 769 F.2d 1363 (9th Cir. 1985). The federal agency is prohibited from granting any license or permit to an applicant unless the state concurs with the applicant's consistency certification or concurrence is conclusively presumed due to the state's failure to act within three months after receipt of such certification. *Id.* § 1456(c)(3)(A).

The CZMA also provides the state with an opportunity to review any plan for the exploration or development of or production from any leased area under the OCSLA to determine whether the plan complies with the state's approved management program. *See id.* § 1456(c)(3)(B). There, too, the project proponent certifies to consistency with the state's coastal plan. *Id.* The federal agency may grant a license or permit for activities under the plan once the state concurs with the certification and notifies the federal action. *Id.*

**B.      Factual Background**

**1.      Agency review and approvals**

The South Fork Wind Farm and South Fork Export Cable Project (the "South Fork Wind Project" or the "Project") includes various offshore components (e.g., wind turbine generators, export cables) located in BOEM's Renewable Energy Lease Number OCS-A-0517 on the Outer Continental Shelf, nineteen miles southeast of Block Island, Rhode Island, and thirty-five miles

9

east of Montauk Point, New York. *See* FEIS at i (copies of all pages in the FEIS referred to herein are annexed collectively as Exhibit A).[3] The Outer Continental Shelf is defined as the submerged lands starting three miles from state coastlines and extending seaward. OCSLA, 43 U.S.C. §§ 1331(a), 1301(a)(2), 1337(p)(1).

In 2007, Interior issued a Programmatic EIS examining the potential impacts of alternative energy and alternate use activities on the Outer Continental Shelf. Am. Compl. ¶ 52. "The analyzed proposed actions included offshore wind, wave, and ocean current energy capture technologies." *Id.* For purposes of assessing the potential environmental impacts, this Programmatic EIS identified New York, Connecticut, Rhode Island, and Massachusetts as areas where offshore wind projects could be built. *Id.* ¶ 53.

After years of study and after public review and comment, in 2013, BOEM published a revised environmental assessment under NEPA for commercial wind leasing and site assessment activities in a wind energy area offshore Rhode Island and Massachusetts and issued a FONSI. *See* 78 Fed. Reg. 33,908 (June 5, 2013). Through a competitive leasing process under 30 C.F.R. § 585.211, Deepwater Wind New England, LLC was awarded the commercial lease for the Project later that year. Am. Compl. ¶ 65; 78 Fed. Reg. 33,898 (June 5, 2013). This lease was later assigned to Deepwater Wind South Fork, LLC, which subsequently changed its name to South Fork Wind, LLC ("South Fork Wind"). Am. Compl. ¶¶ 72–73.

---

[3] The Court may consider the final EIS, BOEM and NMFS's ROD, BOEM's COP approval letter, and the Corps' ROD and permit (exhibits A-E) without converting this motion to one for summary judgment. The documents are referred to in the Amended Complaint and are central to Plaintiffs' claims. *Cephas v. MVM, Inc.*, 403 F. Supp. 2d 17, 20 (D.D.C. 2005). They are also public documents of which the Court can take judicial notice. *See Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 219 (D.D.C. 2017) (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)).

In 2018, South Fork Wind submitted a COP for the Project to BOEM. Am. Compl. ¶ 69. In October 2018, BOEM published a Notice of Intent to prepare an EIS for the Project and requested public comments. *Id.* ¶ 71. In January 2021, BOEM published a draft EIS for the South Fork Wind Project. *Id.* ¶ 74. After public review and comment, BOEM published its Notice of Availability of a Final EIS for the Project and released the Final EIS in August 2021. *Id.* ¶ 76. The EIS selected an alternative that would allow for the installation of twelve wind turbines, instead of the fifteen initially proposed by South Fork Wind. *See* Notice of Availability of a Joint Record of Decision (ROD) for the South Fork Wind, LLC Proposed Wind Energy Facility Offshore Rhode Island, 86 Fed. Reg. 67,969 (Nov. 30, 2021).

Upon completing consultation with BOEM under Section 7 of the ESA, NMFS issued a biological opinion in October 2021 that considered all effects of the Project on species listed under the ESA and designated critical habitat. Am. Compl. ¶ 75. NMFS concluded that the Project would not jeopardize any species listed as threatened or endangered under the ESA. *Id*. In November 2021, NMFS made several minor corrections to the biological opinion after conferring with BOEM. *Id*.

On November 24, 2021, BOEM and NMFS issued a joint ROD approving the Project. *Id*. ¶ 77. Notice of the ROD was published in the Federal Register on November 30, 2021. 86 Fed. Reg. 67,969. The ROD documented BOEM's decision to approve the COP for the Project, as well as NMFS's decision to adopt BOEM's final EIS and issue a final IHA to South Fork Wind. *Id*.; *see also* Ex. B. On January 6, 2022, NMFS issued the IHA, valid from November 15, 2022, to November 14, 2023, for the Project authorizing the incidental take by Level A harassment and Level B harassment of marine mammals during the construction of the project. Am. Compl. ¶ 232. The IHA expired more than seven months ago, and two months before Plaintiffs filed this lawsuit. On January 18, 2022, BOEM issued a letter to South Fork Wind informing it that BOEM

11

had approved the COP and providing terms and conditions with which South Fork Wind must comply. *Id.* ¶ 78; Ex. C.

Also on January 18, 2022, the Corps issued a permit that authorized under Section 10 of the Rivers and Harbors Act, 33 U.S.C. § 403, and Section 404 of the Clean Water Act, 33 U.S.C. § 1344, construction activities associated with the Project. *Id.* ¶ 259; *see* Corps permit, Ex. D. The Corps documented its reasoning in its own record of decision ("Corps ROD"), Ex. E. The Corps permit authorized, under Section 10, construction of no more than twelve offshore wind turbines, an offshore substation, and installation of approximately 21.4 miles of 12-inch diameter submarine inter-array cables, within BOEM's lease area, in accordance with permit conditions and specification. Ex. D at 1. The Corps permit also authorized, under Section 10 and Section 404, South Fork Wind to install approximately 3.36 miles of submarine export cable (the amount located within the territorial sea boundaries). *Id*. at 2.

On March 14, 2024, the Governor of New York announced the completion of the Project. *See Governor Hochul Announces Completion of South Fork Wind* (Mar. 14, 2024), https://www.governor.ny.gov/news/governor-hochul-announces-completion-south-fork-wind-first-utility-scale-offshore-wind-farm.

### 2.    Procedural background

Plaintiffs include five organizations and multiple individuals. On January 16, 2024, Plaintiffs filed a complaint challenging BOEM's, NMFS's, and the Corps' agency actions associated with this Project and the separate Revolution Wind Project. *Green Oceans v. U.S. Dep't of the Interior*, Case No. 1:24-cv-00141-RCL (D.D.C.), ECF No. 1. Because the case challenged two entirely distinct wind projects, Federal Defendants moved to sever, and Judge Lamberth granted the motion, retaining the Revolution Wind Project challenge. *See Green Oceans v. DOI*, Case No. 1:24-cv-00141-RCL, ECF Nos. 20, 25. A new case with the same

caption, *Green Oceans v. United States Department of the Interior*, Case No. 1:24-cv-1087, was created for the South Fork Wind challenge and transferred to Judge Mehta, who consolidated the case with two other cases, both challenging the South Fork Wind Project and currently pending before him. *See Preservation Society of Newport County v. Haaland*, Case No. 1:23-cv-3510; *Southeast Lighthouse Foundation v. Haaland*, 1:23-cv-3514.

On May 8, 2024, Green Oceans filed an Amended Complaint, tailored to challenge only the South Fork Wind Project. ECF No. 34. The Amended Complaint alleges violations of the APA, OCSLA, NEPA, ESA, MMPA, MBTA, CWA, CZMA, and the National Historic Preservation Act ("NHPA").[4]

### III.    STANDARD OF REVIEW

Jurisdiction is a threshold issue that must be addressed before considering the merits of a case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–96 (1998).  Federal Rule of Civil Procedure 12(b)(1) provides for dismissal of a claim for lack of subject matter jurisdiction.  The burden of proving subject matter jurisdiction rests with plaintiff, the "party invoking the federal court's jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Rempfer v. Sharfstein*, 583 F.3d 860, 868–69 (D.C. Cir. 2009). Federal courts are courts of "limited jurisdiction," and are presumed to lack jurisdiction unless a plaintiff establishes its existence. *Kokkonen*, 511 U.S. at 377.

Where, as here, a motion to dismiss makes a facial attack on the complaint, the reviewing court "must accept as true all material allegations of the complaint, and must construe the

---

[4] Consistent with the Court's order consolidating *Green Oceans* with the other two cases, Plaintiffs, including the *Green Oceans* Plaintiffs, moved for summary judgment on their NHPA claims and historic property-focused NEPA claims, and Federal Defendants and South Fork Wind cross-moved for summary judgment. *See* ECF Nos. 39, 46, 47, 49, 50. The FAST-41 and standing arguments presented in this Motion to Dismiss also apply to the NHPA and historic property-focused NEPA claims brought by *Green Oceans*.

complaint in favor of the complaining party." *Ord v. District of Columbia*, 587 F.3d 1136, 1140 (D.C. Cir. 2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). "The court may look beyond the allegations contained in the complaint to decide a facial challenge, 'as long as it still accepts the factual allegations in the complaint as true.'" *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 539 F. Supp. 2d 331, 337–38 (D.D.C. 2008) (quoting *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005)). "This 'tenet' does not apply to legal conclusions couched as factual allegations." *Harris v. Sebelius*, 932 F. Supp. 2d 150, 151 (D.D.C. 2013), *aff'd,* No. 13-5133, 2013 WL 6222952 (D.C. Cir. Nov. 14, 2013) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). The Court may also consider "the complaint supplemented by undisputed facts evidenced in the record plus the court's resolution of disputed facts." *Id.* (quoting *Herbert v. Nat'l Acad. of Sciences*, 974 F.2d 192, 197 (D.C. Cir. 1992)); *see also Concilio De Salud Integral De Loiza, Inc. v. U.S. Dep't of Health & Human Servs.*, 538 F. Supp. 2d 139, 144–45 (D.D.C. 2008) (In reviewing a motion to dismiss under Rule 12(b)(1), "the court is not limited to the allegations contained in the complaint . . . [but] may consider materials outside the pleadings[,]" whereas if the court reviews extrinsic evidence on a motion under Rule 12(b)(6), it converts the motion into one for summary judgment.) (internal citations omitted).

Dismissal is also appropriate where a complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)"). In considering a Rule 12(b)(6) motion, a court presumes that "the complaint's factual allegations are true and construes them liberally in the plaintiff's favor." *Fletcher v. U.S. Dep't of Justice*, 17 F. Supp. 3d 89, 92 (D.D.C. 2014) (citing *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000)). However, the "court need not accept a plaintiff's legal conclusions as true . . . nor must a court presume the veracity of the legal conclusions that are couched as factual allegations." *Fletcher*, 17 F. Supp. 3d at 92–93 (citing *Iqbal*, 556 U.S. at 678; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

14

555 (2007)). The complaint must contain sufficient allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

**IV.      ARGUMENT**

Plaintiffs' Amended Complaint should be dismissed for several reasons. First, the Fixing America's Surface Transportation Act ("FAST-41") bars Plaintiffs' claims. Second, Plaintiffs lack standing to assert their claims. Third, Plaintiffs failed to comply with the ESA's mandatory 60-day notice requirement, meaning that their ESA claims should be dismissed. Fourth, Plaintiffs' OCSLA claims should also be dismissed for failure to comply with OCSLA's 60-day notice requirements. Fifth, Plaintiffs' Sixth Cause of Action, which purports to state a claim arising under the MBTA, should be dismissed because it fails to state a claim on which relief can be granted. Sixth, Plaintiffs' CZMA claim should be dismissed because Plaintiffs are not within the CZMA zone of interest and, even if they were, the Amended Complaint does not state a viable claim for relief or any violation by Federal Defendants.

**A.      FAST-41 bars Plaintiffs' claims.**

FAST-41 is part of an effort to improve federal permitting and streamline approval of large-scale infrastructure projects in certain sectors, including renewable energy production. *See* 42 U.S.C. § 4370m–6(a). This Project is a "covered project" under the Act. *See* Federal Infrastructure Projects, *Fast-41 Covered Projects*, https://perma.cc/QE3X-SLCV (FAST-41 permitting dashboard); 86 Fed. Reg. 8,490.[5] FAST-41 bars Plaintiffs' claims because Plaintiffs

---

[5] Even if 42 U.S.C. § 4370m-6(a)(1) is not a jurisdictional provision, the Court can consider these materials in deciding the motion to dismiss because they are documents "in the public record of which the court may take judicial notice." *Ctr. for Biological Diversity v. Tidwell*, 239 F. Supp. 3d 213, 219 (D.D.C. 2017) (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)).

15

failed to file suit within the two-year statute of limitations and to appropriately comment during the environmental review process.

### 1. Plaintiffs did not file their Amended Complaint within the statute of limitations.

Plaintiffs' Complaint was brought outside the statute of limitations for challenging BOEM's and NMFS's actions as it was filed "later than 2 years after the date of publication in the Federal Register of notice of final agency action on the authorization." 42 U.S.C. § 4370m-6(a)(1)(A). "Authorization" is broadly defined, as relevant here, as "any license, permit, approval, finding, determination, or other administrative decision issued by an agency and any interagency consultation that is required or authorized under Federal law in order to site, construct, reconstruct, or commence operations of a covered project administered by a Federal agency." 42 U.S.C. § 4370m(3).

BOEM and NMFS's joint ROD was issued November 24, 2021, and published in the Federal Register six days later. *See* 86 Fed. Reg. 67,969. As the Federal Register notice disclosed, "[t]he joint ROD includes the decisions of the Department of the Interior (DOI) and NMFS regarding the South Fork Wind COP." *Id.* at 67,969. Under the heading "Final Agency Decisions" in the ROD, the ROD states that "[a]fter carefully considering the FEIS alternatives, including comments from the public on the [draft EIS and final EIS], DOI has decided to approve, with modification, the COP for South Fork Wind adopting the Habitat Alternative." ROD at 15. The ROD states that it "constitutes the final decision of the Department of the Interior." *Id*. at 19. The ROD also documents NMFS's decision to adopt, in part, BOEM's Final EIS and to issue a final Incidental Harassment Authorization (IHA) to South Fork Wind. *Id*. at 21; 86 Fed. Reg. at 67,969. And, in fact, NMFS published notice of the issuance of the IHA on January 6, 2022. 87 Fed. Reg. 806.

The D.C. Circuit has recognized "[t]he issuance of a ROD [can] constitute final agency action." *See Gov't of Province of Manitoba v. Zinke*, 849 F.3d 1111, 1115 (D.C. Cir. 2017). And Plaintiffs allege in their Amended Complaint that the ROD is "final agency approval." Am. Compl. 1. As such, Plaintiffs had until November 30, 2023, "two years after the date of publication in the Federal Register of notice of final agency action on the authorization," to file a challenge BOEM's decision to approve the COP and NMFS's decision to issue the IHA for the Project. Plaintiffs failed to do so. Instead, they brought their Complaint on January 16, 2024. Thus, FAST-41's statute of limitations bars Plaintiffs' claims against BOEM and NMFS.[6]

Plaintiffs may argue that the FAST-41 statute of limitations runs from BOEM's issuance of a COP approval letter on January 18, 2022, instead of the ROD. But this argument must fail because the ROD clearly marks BOEM's decision to approve the COP and delineates it as a final agency decision. ROD at 15–19; 86 Fed. Reg. 67,969. FAST-41 also provides that the statute of limitations runs from the date of publication in the Federal Register of notice of final agency action on the federal authorization. 42 U.S.C. § 4370m-6(a)(1)(A). BOEM published the ROD in the Federal Register, but the approval letter is not published in the Federal Register.

Further, the ROD is final agency action because it marked the consummation of BOEM's decision-making process and legal consequences flowed from the decision. *See Bennett v. Spear*, 520 U.S. 154, 177 (1997). The ROD is a twenty-two-page document signed by relevant decisionmakers at the Department of the Interior and NMFS — the Principal Deputy Assistant Secretary for Land and Minerals Management and the Director of the NMFS Office of Protected

---

[6] The November 30, 2022, Federal Register notice did not address the Corps' permitting action. The Corps published a separate Federal Register notice on April 9, 2024. 89 Fed. Reg. 24,810. So FAST-41's two-year limitations period has not yet expired with respect to the Corps. But, as explained below, Plaintiffs have failed to alleged Article III standing for all their claims, including those against the Corps.

17

Resource — that documents the decisions made and the reasons behind those decisions. The COP approval letter is a one-page letter signed by a BOEM Program Manager, with an appendix that provides the conditions with which South Fork Wind must comply with during the construction and operation of the Project. In short, the ROD documents BOEM's decision to approve the COP. The COP approval letter issues binding conditions for South Fork Wind (that were anticipated in the ROD), but is not a new decision on whether to approve the COP. Thus, the statute of limitations to challenge BOEM's approval of the COP began with the Federal Register notice of the ROD on November 30, 2021.

**2.      Plaintiffs fail to allege that they submitted sufficient comments during the environmental review process.**

FAST-41 also bars claims by parties that did not submit comments during environmental review, and comments must have been sufficiently detailed "so as to put the lead agency on notice of the issue on which the party seeks judicial review, or the lead agency did not provide a reasonable opportunity for such a comment on that issue." 42 U.S.C. § 4370m-6(a)(1)(B). Here, FAST-41 bars Plaintiffs' claims because no Plaintiff alleges in the Amended Complaint that they submitted a comment during the NEPA process for the South Fork Project. Am. Compl. ¶¶ 1–22. Plaintiff Green Oceans notes that it submitted comments on a variety of other projects, but not South Fork, and indeed, its website shows that it was not formed until January 2023, well after the Project was approved. *See* Am. Compl. ¶ 1; *https://green-oceans.org* (last visited June 21, 2024). Though not properly pled, Plaintiff Responsible Offshore Development Alliance ("RODA") and Plaintiff Rich Hittinger did comment during the environmental review of the Project. But FAST-41 bars claims from all other Plaintiffs outright.

Even claims from RODA and Mr. Hittinger, however — and again ignoring that claims against BOEM and NMFS are time-barred — would need to be limited to those issues they

18

raised with sufficient specificity during the comment process. *See* 42 U.S.C. § 4370m-6(a)(1)(B). The Court would only reach that question should it reject the other jurisprudential issues discussed in this brief and the claims in the Amended Complaint proceed to the merits. But we believe RODA's arguments would be limited to claims regarding NEPA, impacts to fisheries, navigation, and right whales. Mr. Hittinger would be limited to claims regarding noise impacts from pile driving the turbine foundations and impacts on private recreational fishing. Issues other than those would be barred from this litigation under FAST-41.

**B.      Plaintiffs lack standing.**

Setting aside FAST-41, the Amended Complaint should be dismissed in its entirety because Plaintiffs lack standing. Plaintiffs have not adequately alleged actual or imminent injury to themselves (or the organizational Plaintiffs' members) traceable to Federal Defendants' conduct that this Court can redress.[7] Under the well-established standard, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, __ S. Ct. __, No. 23-235, 2024 WL 2964140, at *6 (June 13, 2024) (citing *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, (2009); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–561 (1992)). Plaintiffs must demonstrate standing for each claim against each defendant and for each form of relief. *See Murthy v. Missouri*, __ S. Ct. __, No. 23-411, 2024 WL 3165801, at *9 (June 24, 2024). "Setting mere conclusory statements aside, the complaint must contain sufficient factual matter, accepted as true, to support an inference of standing that is plausible on its face." *Air*

---

[7] Federal Defendants addressed the failure to demonstrate standing on the historic properties claims in their motion for summary judgment on those claims, *see* ECF Nos. 46, 47; Am. Compl. ¶¶ 17–22.

*Excursions LLC v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted). Further, where, as here, a plaintiff's asserted injuries arise not from the government's regulation of the plaintiff itself but from agency actions that govern third parties, standing "is ordinarily substantially more difficult to establish." *All. for Hippocratic Med.*, 2024 WL 2964140, at *7.

        **1.**         **Plaintiffs fail to adequately allege injury-in-fact for any claim.**

"Injury-in-fact is part of the 'irreducible constitutional minimum of standing,' including in the case of a procedural injury." *Green Oceans v. U.S. Dep't of the Interior*, Case No. 1:24-cv-00141-RCL, ECF No. 50 at 5 (quoting *Lujan*, 504 U.S. at 560 (internal citation omitted)). The Supreme Court recently reiterated that injury must be concrete, i.e., "real and not abstract," and particularized, i.e., "the injury must affect 'the plaintiff in a personal and individual way,' and not be a generalized grievance." *All. for Hippocratic Med.*, 2024 WL 2964140, at *6 (quoting *Lujan*, 504 U.S. at 560 n.1). The Court emphasized that the standing test screens out those who have only general legal, ideological, or policy objections to governmental action, or who simply believe the government is acting illegally. *See id.* "Moreover, the injury must be actual or imminent, not speculative — meaning that the injury must have already occurred or be likely to occur soon." *Id*.

Here, Plaintiffs have not alleged particularized injury. The Amended Complaint makes no effort to allege how the Project will harm Plaintiffs. The organizational Plaintiffs have not shown that the Project would prevent their advocacy or mission and do not allege facts to demonstrate that the Project would affect their members. Am. Compl. ¶¶ 1–6. As one example, Plaintiff Bat World Sanctuary is a Texas non-profit corporation that works to rescue and protect non-releasable bats. *Id.* ¶ 5. The Amended Complaint does not explain how the Project would have any impact on Bat World Sanctuary. A general interest in bats is not sufficient. *See Lujan*, 504

20

U.S. at 563 (holding that plaintiff must show through specific facts not only that species would be affected but that one or more members would be directly affected apart from their interest in the species). As another example, "Members of ACK for Whales regularly observe, and plan to continue observing, marine mammals, including the North Atlantic right whale, in the waters around Nantucket." Am. Compl. ¶ 6. But they do not allege how the Project will result in injury to their members' interests, particularly given that the Project is not "around Nantucket." "A plaintiff claiming injury from environmental damage must use the area affected by the challenged activity and not an area roughly 'in the vicinity' of it." *Lujan,* 504 U.S. at 565–66 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 887–89 (1990)); *see also Green Oceans*, Case No. 1:24-cv-00141-RCL, ECF No. 50 (denying Green Oceans plaintiffs' motion for preliminary injunction based on lack of standing).

The individual Plaintiffs also do not adequately allege specific, non-speculative harm from the Project. Several of the individual Plaintiffs are fishermen, but the Amended Complaint is devoid of details as to how the Project will result in specific harm to those individuals. *See* Am. Compl. ¶¶ 7, 8, 10, 13, 16. For example, Plaintiff Ralph Craft is a recreational fisherman and owns a store "that builds and creates specialty and custom fishing rods and fishing equipment," but there are no allegations about how the Project would impact him or his business. *Id.* ¶ 8. Many of the individual Plaintiffs do not even allege that they use or visit the area. *See*, *e.g.*, *id.* ¶¶ 5, 14, 16. For instance, Plaintiff Eric Philippi asserts only that he is "a conservationist and steward of the endangered piping plover," but does not allege that he visits the Project area or will otherwise be directly affected by the Project. *Id.* ¶ 14. This is insufficient for standing purposes. *Lujan*, 504 U.S. at 565–66; *Green Oceans*, Case No. 1:24-cv-00141-RCL, ECF No. 50 (finding that Green Oceans plaintiffs did not demonstrate individualized harm related to species).

21

Nor have Plaintiffs alleged concrete, non-speculative harm. For example, Plaintiff Benjamin Riggs "is worried that his view of the ocean and the recreational activities he engages in that relate to the ocean will be significantly degraded by the South Fork Wind Project." Am. Compl. ¶ 15. This allegation is too speculative to support standing, particularly given that the Project was entirely built and operational at the time Plaintiffs filed their Amended Complaint. Plaintiffs do not adequately allege that the Project is harming them or has harmed them, but rest on speculation that it may at some undetermined point in the future impact them. This does not meet Article III's requirements.

The Amended Complaint exemplifies the kind of general objections that the Supreme Court recently warned against in *Alliance for Hippocratic Medicine*. *See* 2024 WL 2964140, at *6. Plaintiffs are opposed to offshore wind development, but do not allege that they will particularly be affected by this Project, as opposed to offshore wind energy projects generally. For example, Plaintiff Elizabeth (Lisa) Quattrocki Knight alleges that offshore wind development will have an impact "on the average citizen's cost of living," that "our sense of well-being depends on a connection to unspoiled habitats," and that "she cares deeply about the world" in which her daughters "will eventually raise their own children." Am. Compl. ¶ 12. This is precisely the "general legal, moral, ideological, or policy objection" that the Supreme Court found insufficient to support standing. *All. for Hippocratic Med.*, 2024 WL 2964140, at *6. Plaintiffs' general opposition to offshore wind projects is insufficient to demonstrate standing here. *See Green Oceans*, Case No. 1:24-cv-00141-RCL, ECF No. 50 (finding that Green Oceans Plaintiffs raised only generalized grievances and did not show injury-in-fact).

    2.      **Plaintiffs do not adequately allege causation**.

For similar reasons, the Amended Complaint does not allege injuries from Federal Defendants' action. As one example, the Amended Complaint alleges that several plaintiffs

resigned from the Rhode Island Fishermen's Advisory Board "in protest of the Rhode Island Coastal Resource Management Commission's decision to approve the third offshore wind project (Revolution Wind, South Fork Wind, and Sunrise Wind) and find federal consistency without incorporating the recommendations of the Fishermen's Advisory Board." Am. Compl. ¶¶ 7, 10, 13. These allegations refer to the state commission's actions, not Federal Defendants'. In addition, South Fork was the first project BOEM approved in this area, and Plaintiffs thus are alleging harm not from this Project but from offshore wind development generally.

To the extent that Plaintiffs allege injuries based on a purported BOEM program to approve offshore wind projects, it is well-settled that a plaintiff lacks standing to challenge the implementation of an agency "program." *Nat'l Wildlife Fed'n*, 497 U.S. at 890. "Under the terms of the APA," instead, a plaintiff "must direct its attack against some particular 'agency action' that causes it harm." *Id.* at 891. "Without the causation requirement, courts would be 'virtually continuing monitors of the wisdom and soundness' of government action." *All. for Hippocratic Med.*, 2024 WL 2964140, at *8 (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984)). Here, Plaintiffs' allegations fail to demonstrate the requisite causation.

3.    **Plaintiffs' claims are not redressable**.

Moreover, Plaintiffs' own assertions that their injuries result in part from the effects of other wind projects call into question whether such injuries could be redressed by an order of this Court with respect to the federal approvals for the one project Plaintiffs challenge in this case. *See Allen*, 468 U.S. at 759–60 ("[S]uits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations . . . , even when premised on allegations of several instances of violations of law, . . . [are] rarely if ever appropriate for federal-court adjudication."). The Amended Complaint fails to allege facts to establish standing on behalf of any individual or organizational plaintiff on the

23

basis of any alleged injury resulting from the specific agency actions at issue in this lawsuit. Thus, there is no Project-specific action for the Court to redress.

In addition, Plaintiffs' CWA and MMPA claims are not redressable because work under the issued permits has been completed, and the IHA issued under the MMPA is no longer active.

### a.    Plaintiffs' CWA claim is not redressable.

Plaintiffs' CWA claim is not redressable because even if the Court granted Plaintiffs their requested relief and vacated the Corps permit, Plaintiffs' alleged injury would not be remedied. Redressability focuses on the appropriateness of the relief requested, and Plaintiffs fail to allege that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Sierra Club v. Jewell*, 764 F.3d 1, 5 (D.C. Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81); *see also Nat'l Wildlife Fed'n v. U.S. Army Corps of Eng'rs*, 170 F. Supp. 3d 6, 14 (D.D.C. 2016) ("Because the conservation groups cannot show that their only injury—caused by bulkheads that existed when their complaint was filed—will be redressed by the injunctive and declaratory relief sought, their substantive injury will not support standing[.]")

Here, Plaintiffs seek to vacate the Corps permit as arbitrary and capricious, *see* Am. Compl., Prayer for relief. Plaintiffs assert one claim under the CWA, the Seventh Cause of Action, and seek to vacate the Corps Section 404 dredge-and-fill permit, which authorized installing approximately 3.36 miles of scour and cable protection within the three-mile boundary of territorial seas. *See* Am. Compl. ¶¶ 253–80; *see also* Corps Permit, Ex. D. In particular, Plaintiffs challenge the scope of the Corps' permit, its failure to consider impacts on Cox Ledge and other natural resources (outside the territorial seas boundaries), its alternatives analysis, and its treatment of cumulative impacts. Am. Comp. ¶¶ 253–80.

South Fork, however, has already completed all of the work that the Section 404 permit authorized. *See Governor Hochul Announces Completion of South Fork Wind* (Mar. 14, 2024), https://www.governor.ny.gov/news/governor-hochul-announces-completion-south-fork-wind-first-utility-scale-offshore-wind-farm. Of note, Plaintiffs allege harm associated with the *construction* of the Project, which is already complete, not its operation, and identify no potential mitigation measures in the Amended Complaint; they simply seek vacatur of the Corps permit. Thus, even if Plaintiffs are correct that the permit authorized work that degraded water quality, a claim that Federal Defendants vigorously dispute, those purported harms cannot be undone. Vacating the permits would not change that. Accordingly, Plaintiffs' CWA claim is not redressable. *See also Nat'l Wildlife Fed'n*, 170 F. Supp. 3d at 14; *Sierra Club v. U.S. Army Corps of Eng'rs*, 277 Fed. App'x. 170, 173 (3d Cir. 2008) ("Because the substantially complete fill forecloses the opportunity for any meaningful relief to Plaintiffs' alleged injuries, we hold that this case is prudentially moot"); *Narragansett Indian Tribal Historic Pres. Off. v. FERC*, 949 F.3d 8, 12 (D.C. Cir. 2022) ("revised regulations do nothing to repair the already completed harm [from an oil pipeline] to the Narragansett Tribe's cultural and religious interests"); *Silver v. IRS*, 531 F. Supp. 3d 346, 360 (D.D.C. 2021) (holding that Plaintiffs failed to establish redressability where "[g]ranting the requested retrospective relief would do nothing to undo the compliance costs Plaintiffs already have incurred.").

In addition, even if Plaintiffs had identified potential mitigation measures, that would not make their CWA claim redressable. When, as here, "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else," redressability hinges "on the response of the regulated . . . third party to the government action or inaction." *Lujan*, 504 U.S. at 562. Here, South Fork has already taken the alleged injurious action, which forecloses any possibility that the injury is redressable. *See Vill. of Bensenville v.*

25

*FAA*, 457 F.3d 52, 70 (D.C. Cir. 2006); *see also Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 150–52 (D.D.C. 2011). The relief requested by Plaintiffs, that the Court vacate the Corps permit, would not remove the installed cable, alter the operation of the Project, or redress Plaintiffs' alleged injuries.[8] Plaintiffs thus lack standing to bring this suit.

        **b.**        **Plaintiffs' MMPA claim is not redressable because the Incidental Harassment Authorization for the Project has expired.**

Plaintiffs also lack standing to challenge the IHA for the Project. Plaintiffs waited to file their Original Complaint, which contained allegations that NMFS acted in an arbitrary and capricious manner in issuing the IHA for the Project, until January 16, 2024. *See Green Oceans*, Case No. 1:24-cv-00141-RCL, ECF No. 1. The Amended Complaint was not filed until May 8, 2024. ECF No. 34. The IHA, however, had an effective date of November 15, 2021, through November 14, 2023, and already was expired at the time Plaintiffs filed their lawsuit. *Id*.; *see also* Case No. 1:24-cv-00141-RCL, ECF No. 20-1 at 16 (memorandum in support of motion to sever, stating that IHA was expired). These facts demonstrate that the Court cannot grant relief to Plaintiffs as to the IHA, and the Fifth Cause of Action therefore is not redressable. As explained below, the lack of redressability means that Plaintiffs do not have standing to bring their MMPA claim, and it should be dismissed.

The Amended Complaint seeks multiple forms of declaratory relief. As to the IHA, Plaintiffs seek "[a]n order holding unlawful, vacating, and setting aside. . . [the IHA]. . .as arbitrary, capricious, and otherwise not in accordance with law[.]" Am. Compl., Prayer for Relief ¶ 1. Yet, the IHA had already expired by the time Plaintiffs brought their lawsuit, and certainly had expired by the time Plaintiffs filed their Amended Complaint. *See Green Oceans*, Case No.

---

[8] Nor is it likely that Plaintiffs *would* seek to undo the work that the Corps permit authorized because under Plaintiffs' theory of harm, uninstalling the cables that have already been laid may itself require a permit and would likely have its own consequences on water quality.

24-cv-00141-RCL, ECF No. 1; *see also* Am. Compl. While Plaintiffs state elsewhere in the Amended Complaint that an actual justiciable case or controversy exists because the issuance of the IHA is a final agency action under the APA, Am. Compl. ¶ 36, the Amended Complaint is otherwise silent on the Court's ability to set aside an agency action that already has lapsed. To establish redressability, a plaintiff must prove "a likelihood that the requested relief will redress the alleged injury." *Steel Co. v. Cit. for Better Env't*, 523 U.S. 83, 103 (1998). But, the IHA has expired and is void on its face.

In other contexts, courts have held that the expiration of a challenged agency action renders a court unable to redress the alleged associated harm. For example, in *Western Watersheds Project v. Interior Board of Land Appeals*, 62 F.4th 1293, 1297 (10th Cir. 2023), the plaintiffs filed a lawsuit in 2019 to challenge grazing permits that had expired in 2018. The court held that the plaintiffs' claim was not redressable: the permits expired and were no longer operative by the time the lawsuit was filed, thus "[t]he courts can offer no remedy for the expired permits." *Id*. As the court explained, "[t]hose permits are gone, so nothing can be done directly about those permits." *Id*.; *see also Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. CV-23-00715-PHX-JAT, 2023 WL 7166544, at *3–4 (D. Ariz. Oct. 31, 2023) (plaintiffs lacked standing to challenge an intergovernmental agreement because it expired before they filed their lawsuit); *Case v. Ivey*, 542 F. Supp. 3d 1245, 1263–64 (M.D. Ala. 2021) (challenge to gubernatorial health orders was not redressable because the orders expired more than four months before the plaintiffs filed their complaint); *cf. Save Long Beach Island v. U.S. Dep't of Commerce*, Civil Action No. 23-1886 (RK) (JBD), 2024 WL 863428, at *11–14 (D.N.J. Feb. 29, 2024) (dismissing MMPA challenge to IHAs for wind projects as moot because the IHAs expired during the course of the litigation).

27

The same is true here: the IHA is "gone," and there is no remedy that this Court can offer. *W. Watersheds Project*, 62 F.4th at 1297. Plaintiffs' MMPA claim, therefore, is not redressable. Having failed to establish that their MMPA claim is redressable, Plaintiffs cannot meet their burden to show that they have standing to bring their Fifth Cause of Action, and it should be dismissed.

For the foregoing reasons, Plaintiffs have failed to adequately allege standing, and their claims should therefore be dismissed.

**C.      Plaintiffs' ESA claim must be dismissed because Plaintiffs failed to provide the required sixty-day notice of intent to sue.**

The ESA citizen-suit provision expressly provides that "[n]o action may be commenced . . . prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator of any such provision or regulation." 16 U.S.C. § 1540(g)(2)(A). "The notice requirement of the [ESA] serves the important purpose of giving the [agency] 'an opportunity to bring itself into complete compliance with the Act and thus likewise render unnecessary a citizen suit.'" *Friends of Animals v. Ashe*, 808 F.3d 900, 904 (D.C. Cir. 2015) (quoting *Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 29 (1989)). Here, the original complaint contained ESA citizen suit claims regarding the South Fork Wind Project. *See Green Oceans*, Case No. 1:24-cv-00141-RCL, ECF No. 1 ("Original Complaint"). Specifically, Plaintiffs alleged that BOEM improperly relied on NMFS's biological opinion in violation of the ESA. *Id.* ¶ 142. The Original Complaint also alleged that BOEM must reinitiate consultation with NMFS because "new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered" as set forth in 50 C.F.R. § 402.16(a)(2). *Id.* ¶¶ 143–47; *see* 50 C.F.R. § 402.16(a)(2). Yet the notice letter that preceded the filing of the Original Complaint was insufficient because Plaintiffs (1) did not wait the full 60

28

days required by the ESA before filing their lawsuit and (2) failed to give any notice of their intent to sue over the South Fork Wind Project. *See* Exhibit A hereto. When Plaintiffs finally sent a notice of intent to sue as to the South Fork Wind Project a month after filing the Original Complaint, that notice also was defective because the ESA claims in the Amended Complaint were broader than the alleged violations identified in the February 2024 notice. As explained further below, the Court should dismiss the ESA claims against BOEM contained in the Fourth Cause of Action because Plaintiffs failed to comply with the mandatory prerequisites for bring such claims.[9]

### 1.    Plaintiffs did not give adequate notice of the ESA claims in the Original Complaint.

On January 5, 2024, Plaintiffs sent a 60-day notice of intent to sue to NMFS, BOEM, and the other agency defendants. *See* Ex. F. The notice included only allegations that the agencies had violated the ESA with respect to the Revolution Wind Project, which is an entirely separate offshore wind project from the South Fork Project at issue here. *Id*. The January 5, 2024, notice included no allegations regarding the South Fork Wind Project. *See id*. Eleven days later, on January 16, 2024, Plaintiffs filed their Original Complaint in Case No. 1:24-cv-00141-RCL. Although Plaintiffs' January 5, 2024, notice of intent to sue did not include any allegations regarding the South Fork Wind Project, the Original Complaint challenged both the Revolution Wind Project **and** the South Fork Project. *See Green Oceans*, No. 1:24-cv-00141-RCL, ECF No.

---

[9] The Fourth Cause of Action also challenges NMFS's biological opinion on the grounds that NMFS arbitrarily and capriciously determined that the Project does not jeopardize the North Atlantic right whale. *See* ECF No. 34 ¶¶ 197–224. A claim that challenges a consulting agency's biological opinion is not an ESA citizen suit claim but arises under the APA. *See Bennett v. Spear*, 520 U.S. 154, 174–78 (1997). To the extent that the Fourth Cause of Action also challenges NMFS's biological opinion on the grounds that it is arbitrary and capricious and fails to comply with the APA, Federal Defendants are not challenging the legal sufficiency of those allegations here but reserve the right to do so at the summary judgment stage.

1. Importantly, the Original Complaint included claims regarding the South Fork Wind Project that arose under the ESA. *Id.* ¶¶ 142, 143–47. While Plaintiffs alleged in the Original Complaint that they had sent a sixty-day notice of their intent to sue under OCSLA, the CWA, and the ESA, and would amend the Original Complaint to add these causes of action when the sixty days expired, *id.* at p.4 n.6, they clearly had not waited sixty days before filing their lawsuit nor had they provided any notice of their intent to sue as to the South Fork Project. *Id.*

One month later, on February 16, 2024, Plaintiffs sent a second sixty-day notice of intent to sue, ECF No. 34-1, stating Plaintiffs' intent to bring ESA claims as to the South Fork Wind Project. *See id.* The February 16, 2024, notice stated that reinitiation of consultation was required because the designation of Cox Ledge as a habitat area of particular concern constituted new information that may affect listed species or critical habitat in a manner or to an extent not previously considered. *See id.* at 42–43. Thereafter, the claims related to the South Fork Wind Project were severed and reassigned to this Court. *Green Oceans*, Case No. 1:24-cv-00141-RCL, ECF No. 25.

Plaintiffs filed their Amended Complaint on May 8, 2024, in the reassigned case, which contained allegations limited to the South Fork Project. *See* Am. Compl. The Amended Complaint, however, alleged that reinitiation of consultation was required based on **two** pieces of new information that revealed effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered: (1) the designation of Cox Ledge (as had been set forth in the February 16, 2024 notice of intent to sue) and (2) a November 2023 study that stated that monitoring for North Atlantic right whales should occur for twenty-four hours prior to pile driving activity versus just one hour. *Id.* ¶¶ 216–17.

Plaintiffs have failed to satisfy the mandatory prerequisite for their ESA claims. *See Hallstrom*, 493 U.S. at 31 (interpreting analogous sixty-day notice requirement under the

30

Resource Conservation and Recovery Act as a "mandatory condition[] precedent to commencing suit"); *Friends of Animals*, 808 F.3d at 903–05 (applying *Hallstrom* to the sixty-day notice provision in the ESA citizen-suit provision and dismissing an ESA suit for insufficient notice); *see also Cary v. Hall*, No. C 05-4363 VRW, 2006 WL 6198320, at *12–13 (N.D. Cal. Sept. 30, 2006) (dismissing an ESA Section 7 claim for failure to provide the required sixty-day notice and the resulting lack of jurisdiction). The ESA plainly states that no lawsuit may be commenced until after sixty days' notice has been given to the Secretary and the alleged violator. 16 U.S.C. § 1540(g)(2)(A). Plaintiffs flouted that requirement in two ways: Plaintiffs failed to wait the full sixty days required by the ESA before filing the Original Complaint and did not give notice that they intended to file a lawsuit as to the South Fork Wind Project (which they did when they filed the Original Complaint). *See Green Oceans*, Case No. 1:24-cv-00141-RCL, ECF No. 1. The defects in the January 5, 2024, notice of intent to sue rendered the ESA claims flawed in their entirety. While Plaintiffs later provided a second notice of their intent to sue that mentioned the South Fork Wind Project and ultimately filed the Amended Complaint, *see* ECF No. 34, this delayed notice of intent to sue, prepared after Plaintiffs already initiated litigation on their South Fork Wind Project allegations, is insufficient to satisfy the ESA's mandatory notice requirement. "[A plaintiff's] defective notice cannot be cured by the filing of an amended complaint after the required notice period." *Basel Action Network v. Maritime Admin.*, 370 F. Supp. 2d 57, 76 (D.D.C. 2005); *see also Forest Guardians v. U.S. Bureau of Reclamation*, 462 F. Supp. 2d 1177, 1184 (D.N.M. 2006) ("Plaintiff may not cure its defective notice by providing a NOI after the original complaint was filed and then waiting sixty days to file a motion to file a supplemental complaint"). For these reasons, the Court should dismiss the ESA claims against BOEM included in the Fourth Cause of Action of the Amended Complaint.

31

**2.    The February 16, 2024, intent to sue letter did not give adequate notice of the reasons why reinitiation of consultation was required.**

As explained above, Plaintiffs' January 5, 2024, notice letter did not discuss the South Fork Wind Project at all. The January 5, 2024, notice letter stated that BOEM and NMFS must reinitiate consultation on the Revolution Wind Project because two occurrences constituted new information that revealed effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered: (1) designation of Cox Ledge as a habitat area of particular concern and (2) a November 2023 study that indicated that sixty minutes of passive acoustic monitoring was insufficient for finding nearby whales before beginning pile driving or detonation activity. *See* Ex. F at 49–50. Plaintiffs' February 16, 2024, notice of intent to sue, however, identified just one reason why reinitiation of consultation was required as to the South Fork Wind Project: designation of Cox Ledge as a habitat area of particular concern. *See* ECF No. 34-1 at 42–43.[10] Although the notice letter identified just one reason why reinitiation of consultation was required, when Plaintiffs filed the Amended Complaint, they alleged that BOEM and NMFS must reinitiate consultation because the designation of Cox Ledge as a habitat area of particular concern *and* the November 2023 study constituted new information that revealed effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered pursuant to 50 C.F.R. § 402.16(a)(2). Am. Compl. ¶¶ 215–18.

The February 16, 2024, notice was likely an effort to cure the defects associated with the January 5, 2024, intent to sue letter. *See* Section IV.C.1, *supra*. But the February 16, 2024, notice itself was deficient because it included only one piece of "new information" that allegedly required reinitiation of consultation, while the Amended Complaint identified a second, separate

---

[10] Confusingly, Plaintiffs cited the November 2023 study in a footnote, but otherwise did not discuss it or identify it as a basis for reinitiation of consultation. *See* ECF No. 34-1 at 43 n.187.

ground in support of Plaintiffs' claim. Plaintiffs' statement that they intended to sue based on failure to reinitiate consultation for one reason does not give sufficient (or, indeed, any) notice of the second reason that appeared in their Amended Complaint. *See Friends of Animals*, 808 F.3d at 903–05 (notice of intent to sue that alleged agency had failed to comply with one statutory requirement does not provide proper notice for a subsequent failure to comply with another statutory requirement); *see also Conservation Force v. Salazar*, 715 F. Supp. 2d 99, 103–04 (D.D.C. 2010) (ESA claim must be dismissed because intent to sue letter did not give notice that the plaintiffs planned to challenge the agency's subsequent failure to issue 12-month finding). The pre-suit notice requirement exists to alert an agency of the violations that are alleged in the subsequently filed complaint. *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520–22 (9th Cir. 1998). That is, as explained in *Center for Biological Diversity v. Haaland*, No. 20-573 (EGS), 2023 WL 2401662, at *6 (D.D.C. Mar. 8, 2023), a notice letter "must, at a minimum, 'provide sufficient information of a violation so that the Secretary or [agency] [can] identify and attempt to abate the violation.'" *Id.* (quoting *Research Air, Inc. v. Norton*, No. CIV.A. 05-623 (RMC), 2006 WL 508341, at *10 (D.D.C. Mar. 1, 2006)). Thus, for example, an intent to sue letter is insufficient when it discusses a potential claim for failure to designate critical habitat but not a potential claim for failure to make a listing determination. *See id.* The former claim can proceed, but the latter cannot. *See id.*

Here, Plaintiffs' February 16, 2024, intent to sue letter failed to give notice to BOEM and NMFS that they intended to file a lawsuit for failure to reinitiate consultation on the South Fork Wind Project based on the November 2023 study cited in their lawsuit. Plaintiffs' failure to identify the November 2023 study as an independent reason for why reinitiation of consultation was required precludes them from asserting an ESA claim on that basis.

33

The Court should therefore dismiss the ESA citizen suit claims that are part of the Fourth Cause of Action because Plaintiffs failed to give notice of their intent to sue as to the South Fork Wind Project and then failed to wait sixty days to file their Original Complaint. And if those defects were not enough, their attempt to cure those failures with the February 16, 2024, notice of intent to sue did not give notice of one of the grounds for which they allege reinitiation of consultation is required. Plaintiffs' ESA citizen suit claims cannot be permitted to go forward.

**D.    Plaintiffs' OCSLA claim should be dismissed for failure to provide statutorily required pre-suit notice.**

Plaintiffs' OCSLA claim suffers from the same notice deficiency. OCSLA authorizes citizen enforcement suits, but "*no action* may be commenced . . . prior to sixty days after the plaintiff has given notice of the alleged violation, in writing under oath, to the Secretary [of the Interior] and any other appropriate official, to the State in which the violation allegedly occurred, and to any alleged violator." *Id.* § 1349(a)(2)(A) (emphasis added). "The language of section 1349(a) is unambiguous" and "the citizen suit provision . . . plainly bars *all cases* which do not comply with the provision." *Duke Energy Field Serv. Assets, LLC v. FERC*, 150 F. Supp. 2d 150, 154, 156 (D.D.C. 2001); *see also Fisheries Survival Fund v. Haaland*, 858 F. App'x 371, 374 (D.C. Cir. May 20, 2021) (barring OCSLA claim for lack of pre-suit notice).

Plaintiffs' second cause of action alleges a violation of the OCSLA. Am. Compl. ¶¶ 85–166. Plaintiffs' first pre-suit notice for the South Fork Project was the February 16, 2024, notice of intent to sue, provided one month after the Original Complaint. *Id.* ¶ 37; Notice of Intent to Sue, ECF No. 34-1. This notice did not meet OCSLA's requirements. First, the notice was not "in writing under oath." *See* ECF No. 34-1. It is not notarized, nor did Plaintiffs aver the information under penalty of perjury. *See id.*; *Duke Energy*, 150 F. Supp. 2d at 154 (D.D.C. 2001). The Court should dismiss the OCSLA claim for this reason alone. *See Duke Energy*, 150 F. Supp. 2d at 155.

34

Second, the notice was not delivered more than sixty-days before January 16, 2024, the date Plaintiffs' Original Complaint was filed. The sixty-day notice period is mandatory. *See* § 1349(a) ("no action may be commenced"); *Fisheries Survival Fund v. Jewell*, No. 16-CV-2409 (TSC), 2018 WL 4705795, at *10 (D.D.C. Sept. 30, 2018), *aff'd sub nom. Fisheries Survival Fund v. Haaland*, 858 F. App'x 371 (D.C. Cir. 2021) (holding that 60-day notice provision is mandatory). Failure to give notice cannot be cured by amending the complaint after the sixty days has passed. *See Allco Renewable Energy Ltd. v. Haaland*, No. 21-cv-11171, 2022 WL 2373914, at *2 (D. Mass. June 30, 2022) (holding that amendment of complaint could not cure lack of notice under § 1349(a)); *Basel Action Network*, 370 F. Supp. 2d at 76 (holding that violation of similar provision cannot be cured by filing an amended complaint); *Friends of Animals v. Salazar*, 670 F. Supp. 2d 7, 13 (D.D.C. 2009) (holding that giving plaintiff "leave to amend its Complaint after commencing an action without proper notice would undermine the statute and render the notice requirement meaningless"). Plaintiffs' notice filed while this case was pending, Am. Compl. ¶ 37, therefore cannot cure the initial failure to comply. *See Garcia v. Cecos Int'l, Inc.*, 761 F.2d 76, 79 (1st Cir. 1985) (holding that law supports "strict application of the notice requirement").

Nor can Plaintiffs' OCSLA claims proceed under the APA. The OCSLA provision "plainly bars *all cases* which do not comply with" the notice provision. *Duke Energy*, 150 F. Supp. 2d at 155. The APA does not provide a means to cure Plaintiffs' failure to comply with section 1349(a), and Plaintiffs' second cause of action under OCSLA should therefore be dismissed.

E.     **Plaintiffs fail to state a claim under the MBTA**.

Plaintiffs Sixth Cause of Action, alleging a violation of the MBTA, fails to state a claim and should be dismissed. Plaintiffs allege that BOEM failed to consider the impact of the Project

35

on migratory birds; to adopt mitigation measures; and to alter the Project to avoid injuring or killing migratory birds. Am. Compl. ¶ 250. Plaintiffs further allege that the Project will take migratory birds, in violation of the MBTA. *Id*. ¶ 251.[11] But the MBTA does not give rise to a cause of action against BOEM based on these allegations. Although a federal agency may not directly engage in activities that take migratory birds without prior authorization from FWS, *Humane Society*, 217 F.3d at 885, the take prohibition does not extend to a federal agency that is acting in its regulatory capacity under a separate statute to authorize third-party activity that allegedly may cause take.

Such is the case here. The Amended Complaint contains no allegation that BOEM will directly take migratory birds. Am. Compl. ¶¶ 248–52. Instead, Plaintiffs allege that BOEM's action is limited to permitting South Fork to construct the Project. *Id*. The alleged action does not involve any direct take of migratory birds by BOEM or any other party. Rather, the allegations are limited to incidental take and, as to BOEM, to evaluating whether to authorize South Fork's activity under OCSLA and other federal statutes. This type of regulatory review does not implicate the MBTA's take provision. As explained in *Friends of the Capital Crescent Trail v. FTA*, 255 F. Supp. 3d 60, 74 (D.D.C. 2017), courts in this circuit "have permitted claims seeking review of agency action that allegedly violates the MBTA . . . where the federal program directly causes the taking of migratory birds." The court further stated that it was "unaware of any decision in our Circuit holding that the MBTA's take prohibition extends to a federal agency that

---

[11] Plaintiffs also allege that the size and placement in the lease area and the construction on land for the cables will cause "habitat loss and alteration." Am. Compl. ¶ 104. Plaintiffs make no mention of habitat loss in their Sixth Cause of Action, but even if they did, it would not save their claim. Habitat modification, standing alone, does not fall within the MBTA's definition of take. *See* 16 U.S.C. § 703(a); 50 C.F.R. § 10.12 (defining "take"); *Seattle Audubon Soc'y v. Evans*, 952 F.2d 297, 302 (9th Cir. 1991) (MBTA and implementing regulations "make no mention of habitat modification or destruction").

authorizes third-party activity that may allegedly cause 'take.'" *Id.*; *see also Pub. Employees for Envtl. Responsibility v. Beaudreau,* 25 F. Supp. 3d 67, 117–18 (D.D.C. 2014) (holding that agency "did not violate the "MBTA" merely by approving a project that, if ultimately constructed, might result in the taking of migratory birds); *Friends of the Boundary Mtns. v. Army Corps. of Eng'rs,* 24 F. Supp. 3d 105, 114 (D. Me. 2014) ("The relationship between the [agency's] regulatory permitting authority and any potential harm to migratory birds appears to be too attenuated to support a direct action against the [agency] to enforce the MBTA's prohibition on 'takes.'"); *Protect Our Cmtys. Found. v. Jewell*, No. 13CV575JLS (JMA), 2014 WL 1364453, at *21 (S.D. Cal. March 25, 2014) ("Federal agencies are not required to obtain a permit before acting in a regulatory capacity to authorize activity ... that may incidentally take protected birds."), *aff'd*, 825 F.3d 571 (9th Cir. 2016).

Plaintiffs' allegations do not give rise to a cause of action against BOEM under the MBTA. Accordingly, the Court should dismiss the Sixth Cause of Action.

## F.  Plaintiffs fail to state a plausible claim for relief for their CZMA claim.

Plaintiffs' CZMA claim in the Eight Cause of Action should be dismissed for failure to state a claim upon for which relief can be granted. First, Plaintiffs do not fall within the statute's "zone of interest." Second, Plaintiffs have not stated a viable claim for relief against BOEM because the state of Rhode Island concurred with the consistency determination for the Project and BOEM is entitled to rely on this concurrence.

### 1.  Plaintiffs' claims should be dismissed because they fall outside the "zone of interests" sought to be protected by the CZMA.

The CZMA does not include a private right of action to challenge compliance with the statute. *See George v. NYC Dep't of City Plan.,* 436 F.3d 102, 104 (2d Cir. 2006); *State of N.J. Dep't of Env't Prot. & Energy v. Long Island Power Auth.,* 30 F.3d 403, 423 (3d Cir. 1994); *Town*

*of N. Hempstead v. Vill. of N. Hills*, 482 F. Supp. 900, 905 (E.D.N.Y. 1979). While the D.C. Circuit has not directly addressed the issues, courts have noted that "the only possible private right of action under [the CZMA] against the federal government would be through the [APA]." *Matter of Defend H20 v. Town Bd. of the Town of E. Hampton*, 147 F. Supp. 3d 80, 109 (E.D.N.Y. 2015) (citing *George*, 436 F.3d at 104); *see also Town of Southold v. Wheeler*, 48 F.4th 67, 78 (2d Cir. 2022) (stating that because the CZMA does not provide a standard of review, courts have routinely subjected CZMA claims to arbitrary-and-capricious review).

The APA allows review for "[a] person . . . adversely affected or aggrieved by agency action within the meaning of a relevant statute." 5 U.S.C. § 702. But to do so, a plaintiff must demonstrate that its interests "fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc., v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (citation omitted); *see also Indian River Cnty. v. DOT*, 945 F.3d 515, 528 (D.C. Cir. 2019). A plaintiff fails the "zone of interests" test "when a plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress authorized that plaintiff to sue." *Lexmark Int'l*, 572 U.S. at 130–31 (internal quotations omitted). This is the case with Plaintiffs and the CZMA here.

The CZMA is designed to encourage cooperation between federal and state governments in coastal zone management. *See* 16 U.S.C. § 1456. This includes (1) encouraging states to exercise authority over activities affecting their coastal zone, and (2) ensuring federal-state partnership for managing coastal areas. 16 U.S.C. § 1456(c)(3)(B); *Cal. Coastal Comm'n v. Granite Rock Co.*, 480 U.S. 572, 592 (1987); *see also* S. Rep. No. 94-277, as reprinted in 1976 U.S. Code Cong. & Admin. News 1768, 1770. The statute essentially creates a federal-state partnership for managing coastal areas, with states taking the lead in developing specific coastal policies while adhering to national guidelines and objectives. *See* 16 U.S.C. § 1456(c). The

CZMA's general policy interests are directed to, and solely involve, the interests of the states, not private individuals, or groups. This is evident in the fact that the statute leaves to the state the determination of whether a given activity in the coastal zone is consistent with the state's coastal plan. *See id*. § 1456(c)(3)(B).

Thus, the "only party that could potentially bring its concerns, interest and potential injuries [related to the consistency determination process] within the zone of interests of the CZMA" is the Rhode Island Coastal Resources Management Council ("CRMC")[12]— the state agency responsible for contesting or concurring with a consistency determination or certification. *See Serrano–Lopez v. Cooper*, 193 F. Supp. 2d 424, 433–34 (D.P.R. 2002) (ruling that the relevant state agency was the only one within the CZMA's zone of interests that could challenge the U.S. Navy's consistency determination under the APA); *see also* 15 C.F.R. § 930.41 (making states responsible for determining whether proposed federal projects are consistent with CMPs); *but see City of Sausalito v. O'Neill*, 386 F.3d 1186, 1201 (9th Cir. 2004) (holding that "adversely affected" local governments have standing to sue under the CZMA); *State of Cal., By & Through Brown v. Watt*, 683 F.2d 1253, 1271 (9th Cir. 1982), *rev'd on other grounds Sec'y of the Interior v. Cal.,* 464 U.S. 312 (1984) (finding that environmental group was within the "zone of interests" of CZMA when "[t]he CZMA issues the environmental groups sought to raise were identical to those raised by the State of California and the local governments, parties who clearly had standing.").

The import of the statute's limited zone of interest is illustrated by the Amended Complaint here. Plaintiffs' CZMA claim alleges that the Project "fails to comply with the Rhode Island Ocean Special Area Management Plan." *See* Am. Compl. ¶¶ 286–88. Plaintiffs are taking

---

[12] The Rhode Island CRMC is the entity responsible for ensuring that state and federal agency actions are compatible with the management plan. *See* Am. Compl. ¶¶ 284, 287.

a position that is diametrically opposed to — and asking the Court to effectively overrule — the position taken by Rhode Island in the process established by the statute. *See Serrano–Lopez*, 193 F. Supp. 2d at 433–34. Plaintiffs' CZMA claim is not within the statute's zone of interest and must be dismissed for failure to state a claim for which relief can be granted.

> **2.      Plaintiffs' CZMA claim should be dismissed because it fails to state a violation of law by BOEM.**

Even if the Court decides that Plaintiffs are within the zone of interest, their claim still fails because: (1) the Rhode Island CRMC issued a concurrence for the Project; and (2) BOEM is entitled to rely on the state agency's consistency determinations about a given project. As a result, Plaintiffs cannot demonstrate that Federal Defendants violated the CZMA and hence, cannot state a viable claim under Rule 12(b)(6).

To survive a motion to dismiss under Rule 12(b)(6), the facts alleged "must be enough to raise a right to relief above the speculative level," and must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Whenever a "Federal agency activity" may affect a state's coastal zone, the CZMA requires the *federal agency* to provide the State a "consistency determination" explaining how the activity is consistent with the State's program. 16 U.S.C. § 1456(c)(1). But when, as here, the federal agency is approving a proposed plan or issuing a federal license or permit to an applicant, then *the applicant* conducts a consistency review and includes a "consistency certification" in its application confirming that the proposed activity complies with the state's coastal management program. *Id*. § 1456(c)(3).[13] The federal agency is prohibited from granting any license or permit until the state concurs with

---

[13] In other words, § 1456(c)(1) review reaches activities where the federal agency is the "principal actor" while §1456(c)(3) review encompasses the "federally approved activities of third parties. *See Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 886 (9th Cir. 2022) (citing *Sec'y of the Interior v. Cal.*, 464 U.S. 312, 332 (1984)).

40

the applicant's consistency certification. *Id*. § 1456(c)(3)(B). Once the state agency concurs, however, the federal agency can presume that the proposed activity complies with the state's coastal management program. *See Enos*, 616 F. Supp. at 63–64.

Plaintiffs' CZMA cause of action fails to adequately allege that BOEM took action contrary to the CZMA.  South Fork Wind, as the applicant, made the consistency determination here and filed a consistency certification with the Rhode Island CRMC, not BOEM. *See* Ex. G at 3. Further, after spending "substantial time and resources to evaluate [South Fork Wind's] consistency certification," the Rhode Island CRMC notified BOEM of its decision to concur with Southfork's consistency determination for the Project. *Id.* at 5, 7–8.[14] The Rhode Island CRMC stated that the Project "complies with the enforceable policies of the Rhode Island coastal management program." *Id*. at 7. Indeed, even Plaintiffs concede that there was a consistency determination and that the State of Rhode Island concurred. Am. Compl. ¶ 287.[15] BOEM is entitled to rely upon Rhode Island's concurrence. *See Enos*, 616 F. Supp. at 63–64 (noting that "there can be no violation of the CZMA when the consistency determination is approved by the state, since the [agency] is entitled to rely upon the state's agreement with the determination."); *see also Knaust v. City of Kingston, N.Y.*, No. 96-cv-601, 1999 WL 31106, at *7 (N.D.N.Y. Jan. 15, 1999) (dismissing the CZMA claims and finding that there is no violation of the CZMA if the

---

[14] For purposes of Rule 12(b)(6) dismissal, the Court may consider "the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice," *Latson v. Holder*, 82 F. Supp. 3d 377, 386 (D.D.C. 2015). The CRMC's consistency determination is central to Plaintiffs' CZMA claim since it is referenced in the Amended Complaint. The Court accordingly can consider the document as part of the pleading for purposes of Rule 12(b)(6).

[15] Moreover, Plaintiffs acknowledge that their true grievance here is not with Federal Defendants, but rather with Rhode Island due to the latter's concurrence. Am. Compl. ¶ 287. In effect, Plaintiffs' CZMA claim is an effort to place the Court in the shoes of Rhode Island and determine *de novo* whether the Project is consistent with Rhode Island's coastal plan. But the Amended Complaint pleads claims against only Federal Defendants.

state approves a consistency determination). Under the CZMA and based upon the allegations in the Amended Complaint, Plaintiffs therefore have not pled any plausible violation of law. Plaintiffs' eighth cause of action under the CZMA should be dismissed.

## V.    CONCLUSION

Plaintiffs' Amended Complaint should be dismissed for multiple reasons. FAST-41 bars Plaintiffs' claims against BOEM and NMFS because they were not brought within two years of the joint ROD approving the South Fork Project and most of Plaintiffs did not comment during the environmental review process with sufficient specificity. Plaintiffs also lack standing to bring their claims, having failed to adequately allege injury-in-fact, causation, or redressability. In addition, Plaintiffs failed to comply with the ESA's and OCSLA's mandatory notice requirements and failed to state a claim for relief on their MBTA claim. Finally, Plaintiffs' CZMA claim should be dismissed because Plaintiffs are not with the zone of interest sought to be protected by the CZMA and they do not state a viable claim for relief or violation of the CZMA by Federal Defendants.

Based on the foregoing, Federal Defendants respectfully request that this Court grant their motion and dismiss Plaintiffs' Amended Complaint.

Respectfully submitted this 8th day of July, 2024,

TODD KIM
Assistant Attorney General
Environment & Natural Resources Division
U.S. Department of Justice

*/s Devon Lehman McCune*
DEVON LEHMAN McCUNE
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
999 18th St., S. Terrace, Suite 370
Denver, CO 80202

42

Tel: 303-844-1487
Email: devon.mccune@usdoj.gov

ESOSA AIMUFUA
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: 202-532-3818
Email: Esosa.Aimufua@usdoj.gov

SARAH IZFAR
United States Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: 202-305-0498
Email: sarah.izfar@usdoj.gov

MICHELLE M. Spatz
United States Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
P.O. Box 7611
Washington, DC 20044-7611
Tel: 202-598-9741
Email: michelle.spatz@usdoj.gov

*Attorneys for Federal Defendants*

43